**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 2 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellant,

v.

JESSE JAMES TIBBETTS,

      Defendant - Appellee.

No. 04-4072

---

**Appeal from the United States District Court**
**for the District of Utah**
**(No. 2:03-CR-168-DB)**

---

Michael S. Lee, Assistant United States Attorney (Paul M. Warner, United States Attorney with him on the brief), Salt Lake City, Utah, for the Plaintiff-Appellant.

Scott Keith Wilson, Assistant Federal Public Defender (Steven B. Killpack, Federal Public Defender with him on the brief), Salt Lake City, Utah, for the Defendant-Appellee.

---

Before **KELLY** , **HOLLOWAY** , and **LUCERO** , Circuit Judges.

---

**LUCERO** , Circuit Judge.

In this interlocutory appeal, the United States contests the district court decision to suppress evidence seized from Jesse James Tibbetts' Toyota 4Runner. In January 2003, Tibbetts and Christopher Doherty were traveling east along

Utah's Interstate 80 ("I-80") in a Toyota 4Runner when they were stopped by Utah Highway Patrol Sergeant Jeff Chugg for what he considered were three violations of Utah's traffic code. Suspecting that Tibbetts and Doherty were transporting narcotics, Chugg asked for and received Tibbetts' permission to search the 4Runner. During this search, Chugg discovered a large quantity of marijuana. Following the government's indictment of Tibbetts, the district court granted a motion by Tibbetts to suppress the evidence and found the stop unjustified. The district court also determined that Chugg's reasonable articulable suspicion, if any existed, was nullified by his failure to address the purported violation with Tibbetts. Of the three purported violations relied upon by Chugg to justify the stop, the United States appeals the district court's determination that there was no basis to suspect a violation of Utah's "mudflap" regulation, and the district court's determination on "nullification." We exercise jurisdiction pursuant to 18 U.S.C. § 3731 and 28 U.S.C. § 1291, and we **VACATE** the district court's order and **REMAND** for further proceedings consistent with this opinion.

## I

On the morning of January 7, 2003, Sergeant Chugg and his Belgian Malanois K-9 Claudio, both members of the special drug interdiction team of the Utah Highway Patrol, observed a Toyota 4Runner traveling eastbound along I-80.

2

As it passed, Chugg noticed something gleaming off the windshield causing him to pull away from the median and follow the Toyota to get a closer look. In pulling alongside the 4Runner, Chugg observed a silver necklace hanging from the rear-view mirror and what appeared to be a series of wires beginning at the driver's door and crossing the top of the windshield in the driver's line of sight. Chugg believed these two conditions violated Utah's traffic code. While following the 4Runner, Chugg also observed that it appeared to have after-market tires that were wider than the factory mudguards. Chugg also believed that this violated Utah's traffic code as the mudguards did not fully cover the tires.

A check of the 4Runner's California license plate numbers revealed that the vehicle was registered to an Anita Tapia.[1] Chugg further observed that the 4Runner was being driven by two men, and, based on his experience and training as a drug interdiction agent, decided that the position of the cargo in the vehicle's rear section was consistent with drug trafficking.

After stopping the 4Runner, Chugg explained to the driver, Tibbetts, that he was being pulled over because the silver necklace hanging from the mirror was causing a glimmer. Tibbetts immediately removed the necklace from the rear view mirror. Chugg did not mention the other two purported violations – the

---

[1] Chugg testified that he had not stopped the 4Runner because of any belief it might have been stolen.

3

wiring across the windshield or the undersized mudflap issue. While talking to Tibbetts, Chugg noticed a strong odor of air freshener and laundry detergent, which he associated with a commonly used means to conceal the odor of narcotics. Chugg then requested Tibbetts' driver's license, registration, and proof of insurance. During their inspection, both Tibbetts and his passenger, Doherty, appeared very nervous. When asked about the car's ownership, Tibbetts responded that it was owned by his girlfriend Anita.

On request by the officer, Tibbetts proceeded to the patrol car, where he gave inconsistent answers to Chugg's questions about Tibbetts' relationship with Anita Tapia, his travel plans, and his relationship with Doherty. Chugg considered many of Tibbetts' responses to be implausible or incredible, which heightened his suspicions. Returning to the 4Runner, Chugg questioned Doherty and received additional responses inconsistent with those of Tibbetts. Chugg asked Doherty if he could search the 4Runner, and Doherty told him it was not his car and he could not consent to the search. After asking Tibbetts if there were drugs or weapons in the vehicle, Chugg asked him for permission to search the 4Runner. Tibbetts responded, "I don't care." Chugg proceeded to conduct a search and ultimately discovered a large quantity of marijuana, which became the

4

source of the indictment[2] and the focus of the suppression motion at issue in this appeal.

In his motion to suppress the evidence obtained from the search, Tibbetts argued both that the initial stop was illegal and that the scope of the detention exceeded the purpose of the stop. Specifically, Tibbetts contended that none of the three purported violations of Utah's traffic code actually were violations, and further, that continuing the detention beyond the time necessary to address these purported violations exceeded the permissible scope of the detention. After an evidentiary hearing, the district court determined that the purported violations involving the silver necklace and the wiring did not constitute actual violations of Utah law, and therefore could not justify the stop. The United States does not appeal that portion of the district court's ruling. At stake in this appeal is the district court's disposition of the third purported violation – the "mudflap" violation – which the district court determined did not support Chugg's traffic stop. The district court based its determination on two factors: (1) the record did not support a finding that this provision was violated; and (2) Chugg's "reasonable articulable suspicion regarding the mudflap violation was nullified because of his failure to address the issue with Tibbetts." United States v.

---

[2] The indictment charged possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).

5

Tibbetts, 319 F. Supp. 2d 1254, 1259 (D. Utah 2004). It is this ruling that we consider today at the government's request.

## II

When reviewing a district court decision to suppress evidence, we must accept the court's findings of fact unless we conclude the findings were clearly erroneous. See United States v. Cervine, 347 F.3d 865, 868 (10th Cir. 2003). "Evaluation of the credibility of witnesses, the weight to be given the evidence, and inferences to be drawn from the evidence are for the district court." United States v. Hernandez, 93 F.3d 1493, 1498 (10th Cir. 1996). We review the evidence in the light most favorable to the court's findings, and "review de novo the ultimate determination of reasonableness under the Fourth Amendment." Cervine, 347 F.3d at 868.

A traffic stop is a "seizure" within the meaning of the Fourth Amendment, "even though the purpose of the stop is limited and the resulting detention quite brief." Delaware v. Prouse, 440 U.S. 648, 653 (1979). Because an ordinary traffic stop is analogous to an investigative detention, we analyze such stops under the principles pertaining to investigatory detentions set forth in Terry v. Ohio, 392 U.S. 1 (1968). United States v. Botero-Ospina, 71 F.3d 783, 786 (10th Cir. 1995).

We conduct a two-step inquiry when determining the constitutionality of a

6

traffic stop, considering first whether the officer's action was justified at its inception, and second, whether it was reasonably related in scope to the circumstances that justified the interference in the first place. See id. at 786. Our focus in this case is on the first inquiry. "An initial traffic stop is valid . . . not only if based on an observed traffic violation, but also if the officer has a reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." United States v. Hunnicutt, 135 F.3d 1345, 1348 (10th Cir. 1998). The validity of a traffic stop under the Fourth Amendment turns on whether "this particular officer had reasonable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction." United States v. Vercher, 358 F.2d 1257, 1261 (10th Cir. 2004). So long as that standard is satisfied, it is irrelevant that the officer may have had subjective motives for stopping the vehicle. See United States v. v. Callarman, 273 F.3d 1284, 1286 (10th Cir. 2001); Hunnicutt, 135 F.3d at 1348; Botero-Ospina, 71 F.3d at 787.

Speaking to the first step of the Terry analysis, the government argues that Chugg had a reasonable articulable suspicion of a violation of Utah Code § 41-6-150.10[3] because Chugg noticed that the 4Runner's mud flaps were not

---

[3] In pertinent part Utah Code § 41-6-150.10 states:
"(2)(a) Except as provided in Subsections (3) and (4), when
(continued...)

7

wide enough to cover the vehicle's oversized after-market tires.  It was in rejecting this argument that the district court found "as a matter of law that this portion of the Utah Code does not support Sgt. Chugg's traffic stop."  Tibbetts, 319 F. Supp. 2d at 1260.  We review questions of law de novo.  See United States v. Eylicio-Montoya, 70 F.3d 1158, 1161 (10th Cir. 1995).  Chugg testified that he stopped the 4Runner because he believed that the statute is violated when mudflaps fail to fully cover the wheels.  Although the district court concluded, based on its evaluation of Chugg's testimony, that the record before it failed to establish a violation of Utah Code § 40-6-150.10, this is not the relevant inquiry.  See Tibbetts, 319 F. Supp. 2d at 1259-1260.  Instead, the district court must

_____

[3](...continued)
> operated on a highway, the following vehicles shall be equipped with wheel covers, mudguards, flaps, or splash aprons behind the rearmost wheels to prevent, as far as practicable, the wheels from throwing dirt, water, or other materials on other vehicles: . . . (i) a vehicle that has been altered: (A) from the original manufacturer's frame height; or (B) in any other manner so that the motor vehicle's wheels may throw dirt, water, or other materials on other vehicles; . . . (3) Wheel covers, mudguards, flaps, or splash aprons are not required if the motor vehicle, trailer, or semitrailer is designed and constructed so that the requirements of Subsection (1) are accomplished by means of fenders, body construction, or other means of enclosure."

The 1991 amendment to the statute added a new subsection (1) which incorporated definitions from another statutory provision and renumbered the subsections; the "requirements of Subsection (1)" referred to in subsection (3) are those in the current subsection 2(a).

8

determine whether Chugg had reasonable suspicion of a violation, not whether there was actually a violation. See Vercher, 358 F. 3d at 1263-64; Callarman, 273 F.3d at 1287; Hunnicutt, 135 F.3d at 1348.

Moreover, the district court did not construe the Utah statute in question to determine whether the Utah traffic law regarding the use of mudflaps provided Chugg with an objectively justifiable basis for stopping Tibbetts. Under the Fourth Amendment, the district court must determine whether Chugg had a reasonable articulable suspicion of a violation of Utah's "mudflap" law in light of the facts as Chugg observed them, or whether Chugg simply misunderstood the law.

The parties did not brief, nor can we discover, any Utah case interpreting this particular code provision. Thus, when evaluating the issue of the reasonableness of the traffic stop under the Fourth Amendment, the district court must determine how the Utah courts would interpret this statute in like circumstances. United States v. DeGasso, 369 F.3d 1139, 1145-46 (10th Cir. 2004) (federal courts must predict how the state court would interpret the code in light of state appellate court opinions, decisions from other jurisdictions, statutes, and treatises). In construing statutes, Utah courts look to the plain language of the statute, and only when the language is ambiguous do they seek guidance from legislative history or policy considerations. See Brinkerhoff v. Forsyth, 779 P.2d

685, 686 (Utah 1989). Additionally, criminal statutes are not construed strictly, but according to their fair import "to promote justice and to effect the objects of the law and general purposes . . . ." Utah Code. Ann. § 76-1-106.

Once the district court interprets the statute, it must evaluate Chugg's testimony[4] to determine if he articulated the reasonable suspicion of a violation required under the Fourth Amendment, and must make specific findings of fact and conclusions of law supporting its ultimate determination.

Reasonable suspicion is "a particularized and objective basis" for suspecting the person stopped of criminal activity. United States v. Cortez, 449 U.S. 411, 417-418 (1981). "A traffic stop based on an officer's incorrect but reasonable assessment of the facts does not violate the Fourth Amendment." United States v. Chanthasouxat, 342 F.3d 1271, 1276 (11th Cir. 2003) (citations omitted); see also Illinois v. Rodriguez, 497 U.S. 177, 185 (1990). The Supreme Court in Rodriguez explained that in order to satisfy the reasonableness requirement of the Fourth Amendment, what is generally demanded of "the police officer conducting a search or seizure under one of the exceptions of the warrant

---

[4] Chugg testified that the 4Runner appeared to have oversized tires which were wider than the factory mudflaps, and he believed that this discrepancy alone was a violation of Utah law. Although the wheels were wider than the mudguards, Chugg testified that they did not extend outside of the vehicle's fenders or bumpers. On cross examination, he also testified that he had not observed the 4Runner's wheels throwing any dirt, water, or other materials up from the road as he followed. (R. at 111).

requirement . . . is not that they always be correct, but that they always be reasonable." Rodriguez, 497 U.S. at 185.

We have consistently held that an officer's mistake of fact, as distinguished from a mistake of law, may support probable cause or reasonable suspicion necessary to justify a traffic stop. DeGasso, 369 F.3d at 1144; see also United States v. Salinas-Cano, 959 F.2d 861, 865 (10th Cir. 1992). But we have also held that failure to understand the law by the very person charged with enforcing it is not objectively reasonable. See DeGasso, 369 F.3d at 1144. As explained by the Fifth Circuit in a similar mistake-of-law case:

> "The rule articulated by the Supreme Court in Whren provides law enforcement officers broad leeway to conduct searches and seizures regardless of whether their subjective intent corresponds to the legal justifications for their actions. But the flip side of that leeway is that the legal justification must be objectively grounded."

United States v. Miller, 146 F.3d 274, 279 (5th Cir. 1998) (citing Whren v. United States, 517 U.S. 806 (1996)) (other citations omitted).

Because the district court's findings are unclear as to whether Chugg's observations provided him with a reasonable suspicion of a violation of the mudflap provision, we remand to the district court to conduct this analysis. As a mixed question of fact and law, the district court must determine whether Chugg's belief that the law was violated because the mudflaps did not fully cover the wheels was correct, a reasonable mistake of fact, or an impermissible mistake of

11

law.[5]

We next turn to the second basis for the district court's decision – that "Chugg's reasonable, articulable suspicion [if it existed] regarding the mudguard violation was nullified because of his failure to address the issues with Tibbetts." Tibbetts, 319 F. Supp. 2d at 1259. Standing alone, this basis would be insufficient to justify granting Tibbetts' motion to suppress as there is no support for the concept of nullification of reasonable suspicion in this or any other circuit's authority. We note, however, that when police completely ignore the purported reason justifying the initial traffic stop, a court may consider that failure when evaluating the <u>objective</u> reasonableness of the stop under the Fourth Amendment. As we have stated, reasonableness is the "touchstone" of a Fourth Amendment analysis, to be evaluated under the totality of the circumstances. See United States v. Holt, 264 F.3d 1215, 1230-1231 (10th Cir. 2001). A police officer's failure to address the purported violation giving rise to the stop, while not dispositive of the Fourth Amendment question, is one of the circumstances that courts may evaluate against this touchstone. But strictly speaking, it does not in and of itself "nullify" a reasonable articulable suspicion based on fact and law.

Accordingly, we **VACATE** the district court order and **REMAND** to the

---

[5] We note that Chugg's testimony established that the wheels did not extend outside the fenders, and were not observed to throw dirt, water, or other materials.

12

district court for proceedings in accordance with this opinion.

No. 04-4072, United States v. Jesse James Tibbets

**KELLY**, Circuit Judge, concurring in part and dissenting in part.

I concur in the court's opinion that reasonable suspicion of a mudguard violation could not be nullified by the police officer's failure to address it with Mr. Tibbets.  See Devenpeck v. Alford, 125 S. Ct. 588, 593-594 (2004) (officer's state of mind is not revelant to individualized suspicion); Whren v. United States, 517 U.S. 806, 813 (1996) (same).  I dissent from the court's opinion to the extent that it orders a remand requiring the district court to make findings on whether the officer had reasonable suspicion of such a violation.

Such an inquiry requires an analysis of Utah's mudflap statute, Utah Code § 41-6-150.10.  This is a legal inquiry, one that we would undertake independently of the district court.  See Salve Regina Coll. v. Russell, 499 U.S. 225, 238-39 (1991).  Indeed, in a similar case, the Ninth Circuit refused to remand for a statutory analysis, conducting the inquiry itself.  United States v. King, 244 F.3d 736, 739-42 (9th Cir. 2001) (noting the court had "not yet explicitly ruled on a case . . . where an officer was mistaken about a statute not yet interpreted by the courts" and proceeding to analyze the state traffic statute at issue); see also United States v. Rojas-Millan, 234 F.3d 464, 468-70 (9th Cir. 2000) (court analyzed state statutory provision and concluded that officer's reasonable suspicion was objectively grounded in the law).

The court directs the district court on remand to "determine whether [the officer's] belief that the law was violated because the mudflaps did not fully cover the wheels was either correct, a reasonable mistake of fact, or an impermissible mistake of law." Prop. Op. at 12. No mistake of fact (reasonable or unreasonable) is involved in this case. As the court notes, the officer testified the 4Runner had after-market tires that were wider than the mudflaps, *but that they did not extend beyond the vehicle's fenders and bumpers.* Prop. Op. at 10 n.4. Given this uncontroverted fact, all that remains is a legal inquiry: do these facts provide reasonable suspicion of a violation of the mudflap statute?

The statute must be interpreted according to its plain language unless there is an ambiguity. State v. Thurman, 911 P.2d 371, 373 (Utah 1996); see also DeGasso, 369 F.3d at 1146 (holding that federal court must adopt state rules of statutory construction when interpreting state statutes). Utah Code § 41-6-150.10(2) provides that a vehicle that has been "altered . . . in . . . any manner so that [its] wheels may throw dirt, water, or other materials on other vehicles" must have, behind its rearmost wheels, "wheel covers, mudguards, flaps, or splash aprons . . . at least as wide as the tires they are protecting." However, such equipment is not required "if the motor vehicle . . . is designed and constructed so that the [purpose of the statute] is accomplished by means of fenders, body construction, or other means of enclosure." Id. § 41-6-150.10(3).

-2-

Assuming the 4Runner was altered within the meaning of the statute, the government failed to meet its burden to prove the officer had reasonable suspicion of a violation. United States v. Salzano, 158 F.3d 1107, 1111 (10th Cir. 1998). Other than the officer's observations of the vehicle's tires, the government's sole evidence at the suppression hearing was the officer's testimony that if the tires were wider than the mudflaps, the statute had been violated. This belief confirms what is objectively apparent from the complimentary factual testimony–part of the statute is being ignored–mudflaps are not required when the purpose of the statute is accomplished by means of fenders or other means of enclosure. An officer's mistaken view of the law, even when reasonable, is not an "*objectively justifiable basis*" for making a stop. DeGasso, 369 F.3d at 1145. Although the court is correct that there need not be an actual violation, an accurate view of the law being enforced is required. No matter how well intentioned, a mistaken view of the law will not suffice for reasonable suspicion. For these reasons, I would affirm the suppression order. I respectfully dissent.