BRISCOE, Chief Judge.
Defendant Jesse W. Nicholson appeals the district court’s denial of his motion to suppress evidence. He appeals after entering a conditional guilty plea to three drug and weapons-related charges. We reverse the district court’s ruling on the motion to suppress and remand with directions to vacate Nicholson’s convictions.
I
Midday June 17, 2010, defendant Jesse Nicholson stopped at a red light at the busy intersection of 19th Street and Main Street in Roswell, New Mexico. Nicholson was in a left-turn lane, planning to turn from eastbound 19th Street and enter northbound Main Street. Roswell Police Department Officer Doyle Baker was in his vehicle behind Nicholson. Main Street has multiple lanes in each direction.
When the traffic light changed to permit a left turn, Nicholson made a left turn into Main Street’s outermost (i.e. right, northbound) lane. He did so, he says, to reach a business near the intersection. He proceeded in this fashion so he would not impede traffic when he made a quick shift into the right lane to enter the parking lot. The intersection had no markings or instructions to indicate that a driver must maintain and complete a turn by remaining in the left lane.
But according to Officer Baker, Nicholson was insufficiently cautious in making his left turn. Baker testified that by Nicholson’s completing his turn in the right lane he cut off cars making right-hand turns on a red light from westbound 19th Street onto Main Street’s outermost, northbound lane.[1] Baker stopped Nicholson, believing Nicholson’s failure to enter the left lane when completing his left turn violated Roswell ordinance 12-6-5.1. Smelling marijuana as he approached the vehicle, Baker asked Nicholson to step out of the car. As Nicholson complied with this request, Baker spotted two glass pipes — commonly used for smoking methamphetamine — and a police scanner in the driver’s door pocket. Baker asked for consent to search the vehicle; Nicholson refused. Officer Baker released Nicholson after issuing a traffic citation, but seized the car.
Police towed the car and also sought a search warrant. After receiving and executing the search warrant, they discovered “various items, including over fifty grams of methamphetamine hidden underneath the dashboard, a loaded .40 caliber pistol, a scale, assorted pills, marijuana seeds, small plastic baggies, and a small notebook with items written down in it.” ROA Vol. I at 20-21.

*1238
Procedural Background

A grand jury subsequently returned a three-count indictment against Nicholson based on the items found in the car. Count 1 of the indictment charged Nicholson with unlawfully, knowingly and intentionally possessing with intent to distribute 50 grams and more of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), and 18 U.S.C. § 2. Count 2 of the indictment charged Nicholson, a convicted felon, with knowingly possessing a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Count 3 of the indictment charged Nicholson with knowingly carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)®.
Nicholson filed a motion to suppress the evidence obtained from the traffic stop. Nicholson argued that N.M. Stat. Ann. § 66-7-322 — which is essentially analogous to the city ordinance he was cited as violating — did not prohibit the left turn he made, and that, as a result, the traffic stop violated his Fourth Amendment rights. At the hearing held on the motion to suppress, Nicholson suggested that the court should certify the question to the New Mexico Supreme Court if it was uncertain about the interpretation of the ordinance. The district court denied this request, instead stating “I just have to do the best I can.” ROA Vol. Ill at 417. The court then determined the traffic stop was legal because the ordinance prohibited the left turn made by Nicholson. The court then denied Nicholson’s motion to suppress.
The ease proceeded to trial in March 2011, but a jury was unable to reach a verdict on any count. Nicholson subsequently entered into a conditional plea agreement, pleading guilty to all counts, but reserving his right to appeal the denial of his motion to suppress. ROA Vol. I at 29-35. Nicholson was sentenced to 63 months in custody on counts 1 and 2, to be served concurrently, and 60 months’ custody on count 3, to be served consecutively to the sentences on counts 1 and 2.
II

a. Standard of Review

When reviewing a denial of a motion to suppress, we review de novo the district court’s conclusion that the officer’s actions were reasonable. United States v. Burciaga, 687 F.3d 1229, 1230 (10th Cir.2012). Considering the evidence in the light most favorable to the prevailing party, we defer to the district court’s findings on questions of fact, reviewing only for clear error. Id. We review questions of law de novo. United States v. Johnson, 584 F.3d 995, 998 (10th Cir.2009).

b. Officer Violated the Fourth Amendment by Stopping Nicholson on the Basis of a Turn That was Not Illegal

The Fourth Amendment requires that a traffic stop be “objectively justified” at its inception. United States v. DeGasso, 369 F.3d 1139, 1143 (10th Cir.2004). That means a traffic stop must be “based on an observed traffic violation” or a police officer’s “reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring.” United States v. Eckhart, 569 F.3d 1263, 1271 (10th Cir.2009) (quoting United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir.1995) (en banc)). Although an officer’s mistake of fact can still justify a probable cause or reasonable suspicion determination for a traffic stop, an officer’s mistake of law cannot. United States v. Tibbetts, 396 F.3d 1132, 1138 (10th Cir.2005). “[Fjailure to understand the law by the very person charged with enforcing it is not objectively reasonable.” Id.
*1239 Nicholson argues Officer Baker made a mistake of law when he stopped Nicholson for making a left turn into Main Street’s outermost lane. The district court rejected this argument, concluding Roswell traffic ordinance § 12-6-5.1 prohibited this conduct. We review the district court’s construction of state law de novo. DeGas-so, 369 F.3d at 1144. The New Mexico Supreme Court has not interpreted this provision, so we must instead determine how the New Mexico Supreme Court would interpret it were the court to face the issue. Tibbetts, 396 F.3d at 1137-38.
Nicholson was stopped and cited for a violation of Roswell traffic ordinance § 12-6-5.1, which regulates the position and method of turns. More specifically, the officer stopped Nicholson on the assumption that § 12-6-5.1 requires a driver making a left turn to complete the turn in the leftmost lane. Id.[2] Roswell has adopted the New Mexico Uniform Traffic Code, which includes ordinance § 12-6-5.1, set out below:
12-6-5.1 REQUIRED POSITION AND METHOD OF TURNING AT INTERSECTION.
The driver of a vehicle intending to turn at an intersection shall do so as follows:
A.Both the approach for a right turn and a right turn shall be made as close as practicable to the right-hand curb or edge of the street.
B. At any intersection where traffic is permitted to move in both directions on each street entering the intersection, an approach for a left turn, except where left-turn provisions are made, shall be made in that portion of the right half of the street nearest the center line thereof and by passing to the right of such center line where it enters the intersection and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the street being entered. Whenever practicable the left turn shall be made in that portion of the intersection to the left of the center of the intersection.
C. Upon a street with two (2) or more lanes for through traffic in each direction, where a center lane has been provided by distinctive pavement markings for the use of vehicles turning left from both directions, no vehicle shall turn left from any other lane. A vehicle shall not be driven in this center lane for the purpose of overtaking or passing another vehicle proceeding in the same direction. Any maneuver other than a left turn from this center lane will be deemed a violation of this section.
D. At any intersection where traffic is restricted to one (1) direction on one (1) or more of the streets, the driver of a vehicle intending to turn left at any such intersection shall approach the intersec *1240 tion in the extreme left-hand lane lawfully available to traffic moving in the direction of travel of such vehicle and after entering the intersection the left turn shall be made so as to leave the intersection, as nearly as practicable, in the left-hand lane lawfully available to traffic moving in such direction upon the street being entered.
E. No person shall drive across any private or public property, including but not limited to parking areas, driveways and service station areas, for the purpose of avoiding any traffic control device or sign.
Although the New Mexico Supreme Court has not interpreted this provision, the New Mexico Court of Appeals recently concluded the analogous state statute,[3] N.M. Stat. Ann. § 66-7-322, did not prohibit the type of left turn made by Nicholson. State v. Almeida, 149 N.M. 651, 253 P.3d 941, 943-44 (N.M.Ct.App.2011). It noted that Section 66-7-322(B) does not by its text require that a driver turn into a specific lane, while other sections which address turns do. Section 66-7-332(A) requires a driver to enter the rightmost lane when making a right turn. Section 66-7-332(D) requires a driver to enter the leftmost lane when making a left turn onto or from a one-way street. Id. Reading the statute as a whole, the court persuasively reasoned the omission of a restriction in Section 66-7-322(B) combined with the detailed requirements in (A) and (D) demonstrated the absence of a legislative intent to prohibit left turns into the outermost lane when travel on one-way streets is not at issue. Id. at 944.
Although the government correctly asserts we need not adopt the opinion of the intermediate appellate court, see United States v. Valadez-Valadez, 525 F.3d 987, 993 (10th Cir.2008), it has advanced no rationale which would justify our departing from its reasoning. The court of appeals applied sound methods of statutory interpretation, reading the statute as a whole so that it gave effect to all of its provisions. Any contrary reading would contravene the legislature’s apparent intent, requiring us to read words into the statute which the legislature demonstrated it could have, but did not, include. Despite the many statutory provisions which regulate turns, none specifically prohibits the method Nicholson employed in making his turn.[4] We con- *1241 elude the traffic ordinance relied upon by Officer Baker did not provide a legal basis for his stop of Nicholson.
The government insists we should nonetheless uphold the stop because the law which served as the basis for Officer Baker’s stop is not “plain and unambiguous.” Even assuming the law was unclear, we cannot agree. In our circuit, as in most others, mistakes of law made by an officer are objectively unreasonable. See Tibbetts, 396 F.3d at 1138; see also United States v. McDonald, 453 F.3d 958, 960-62 (7th Cir.2006) (officer lacked probable cause to stop defendant based on mistaken belief defendant violated law by using his left-turn signal while going around a bend); United States v. Chanthasouxat, 342 F.3d 1271, 1278-80 (11th Cir.2003) (held a mistake of law invalidated a traffic stop even though the officer believed the law existed based on training, guidance from a magistrate, and the more than 100 tickets he had written citing it); United States v. Lopez-Soto, 205 F.3d 1101, 1106-07 (9th Cir.2000) (officer lacked reasonable suspicion to stop defendant based on mistaken belief about proper placement of registration sticker); United States v. Miller, 146 F.3d 274, 277-79 (5th Cir.1998) (officer lacked probable cause to stop defendant based on mistaken belief defendant violated law by using turn signal without changing lanes or turning); but see United States v. Washington, 455 F.3d 824, 827 (8th Cir.2006) (instead looking at whether a mistake of law is “objectively reasonable”).[5]
As we said in Tibbetts, “failure to understand the law by the very person charged with enforcing it is not objectively reasonable.” 396 F.3d 1132 at 1136. See also Sherouse v. Ratchner, 573 F.3d 1055, 1059 (10th Cir.2009) (“While an officer’s reasonable but mistaken understanding of the facts justifying a search or seizure does not negate the legitimacy of a probable cause determination, an officer’s reasonable but mistaken understanding of the applicable law he is enforcing does.”). Nothing in our opinion in Tibbetts suggests we actually meant to limit this rule only to the mistaken understanding of “plain and unambiguous laws.”[6] In providing the district court with guidance for interpreting the Utah statute at issue we said that “Utah courts look to the plain language of the statute, and only when the language is ambiguous do they seek guidance from legislative history or policy considerations.” Id. at 1138. This instruction on ambiguity seems unnecessary if we only fault police officers when a law is plain and unambiguous.
*1242 Despite the dissent’s contention, we come to this conclusion by more than just isolating a single sentence of the Tibbetts opinion. Throughout the opinion in Tib-betts, we also took care to distinguish the difference between mistakes of fact and mistakes of law — something that only matters if we treat them differently. Cf. United States v. Smart, 393 F.3d 767, 770 (8th Cir.2005) (“In any case, in our circuit the distinction between a mistake of law and a mistake of fact is irrelevant to the fourth amendment inquiry.”). That is, we excuse reasonable mistakes of fact, but not “reasonable” mistakes of law. Remand to determine the question of whether the officer had made a mistake of fact or a mistake of law would have been unnecessary in Tib-betts if we applied a reasonableness analysis to both types of mistakes.
Moreover, we said that on remand “the district court must determine whether [Sergeant] Chugg had a reasonable articu-lable suspicion of a violation of Utah’s ‘mudflap’ law in light of the facts as Chugg observed them, or whether Chugg simply misunderstood the law.” 396 F.3d at 1137 (emphasis added). Later we said “[w]e have consistently held that an officer’s mistake of fact, as distinguished from a mistake of law, may support probable cause or reasonable suspicion.” Id. at 1138 (emphasis added). Finally, we instructed the district court on remand to “determine whether Chugg’s belief that the law was violated because the mudflaps did not fully cover the wheels was correct, a reasonable mistake of fact, or an impermissible mistake of law.” Id. at 1139. Notably, we did not give the district court the option of deciding whether the officer made a “permissible” mistake of law.
Further, as we have acknowledged, requiring law enforcement personnel to know the law they are asked to enforce comports with a basic policy of fairness. If “[a]s a rule, ... a defendant is presumed to know the law, we must expect as much from law enforcement.” United States v. Orduna-Martinez, 561 F.3d 1134, 1137 n. 2 (10th Cir.2009). Permitting officers to excuse their mistakes of substantive law as “reasonable” “would remove the incentive for police to make certain that they properly understand the law that they are entrusted to enforce and obey.” United States v. Lopez-Soto, 205 F.3d 1101, 1106 (9th Cir.2000). In addition, although the dissent repeatedly refers to our decision as creating a “new” rule of constitutional law, the outcome we propose here places us in accord with the vast majority of our sister circuits — whose decisions we have repeatedly cited to in our earlier opinions. See Orduna-Martinez, 561 F.3d at 1137 n. 2 (“Other circuits have held that a trooper’s reasonable mistake of law cannot make an otherwise impermissible stop reasonable. In agreement with these circuits, we have held that failure to understand the law by the very person charged with enforcing it is not objectively reasonable.”) (citations and quotations omitted); see, e.g., Tibbetts, 396 F.3d at 1138 (citing United States v. Miller, 146 F.3d 274 (5th Cir.1998)); DeGasso, 369 F.3d at 1144-45 (citing United States v. Chanthasouxat, 342 F.3d 1271 (11th Cir.2003)). Given this precedent, we hold the Officer Baker’s actions were unreasonable whether or not the ordinance was “plain and unambiguous.”
Although we are bound by circuit precedent, we must also point out that any fears that this rule is too restrictive are overstated. Because we retain an objective, totality of the circumstances analysis, actions taken based on a subjective misunderstanding of the law will still, in some circumstances, be considered reasonable.[7] *1243 We would not, for instance, hold unreasonable the actions of an officer who pulled over a motorist driving 75 miles per hour in a 55-mile-per-hour zone, even if the officer himself believed the speed limit was 65 miles per hours. Cf. United States v. Wallace, 213 F.3d 1216, 1220 (9th Cir.2000) (initial stop justified where the officer’s “observations correctly caused him to believe that Wallace’s window tinting was illegal” although he was “wrong about exactly why”). Indeed, we will uphold a traffic stop as long as there was reasonable suspicion to stop the defendant for “ ‘any one of the multitude of applicable traffic and equipment regulations’ of the jurisdiction.” United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir.1995) (en banc) (quoting Delaware v. Prouse, 440 U.S. 648, 661, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)). See also Eckhart, 569 F.3d at 1271 (10th Cir.2009) (upholding traffic stop despite officer’s mistake of law because officer had reasonable suspicion to stop vehicle for another related violation of Utah law); United States v. Eckhart, No. 2:05CR529DAK, 2006 WL 1073465, at *3 (D.Utah Apr. 10, 2006) (state trooper testifying incorrectly about requirements of Utah law). So although a defendant need only violate one provision of a vast number of local, state, and federal laws to trigger criminal liability, police officers can argue they had reasonable suspicion to stop a defendant based on any of those laws— even if the officer was mistaken about the specific law he thought the defendant was violating. A single mistake by a law enforcement officer will not necessarily invalidate the stop and any resulting search.
Law enforcement officials have another advantage over citizens — they can, in some circumstances, seek a warrant to confirm their belief about the interpretation of a statute. True, as the dissent points out, “obscure regulatory edicts” may exist. See Dissent Op. at 1254. But we also cannot imagine many circumstances where a law enforcement official would need to execute a warrantless search based on someone violating one of those regulations. Even if we held the subsequent search unreasonable because the judge also misinterpreted the law, our good faith precedent would likely provide an exception to the exclusionary rule. Moreover, one would hope that a law enforcement official would clarify his understanding of any unclear provision before bringing the full force of the law upon an unsuspecting citizen.
While we acknowledge that the Supreme Court has excused other mistakes made by police officers, none of its rationales for excusing those mistakes apply to mistakes of substantive law. The Supreme Court has excused an officer’s mistake regarding the constitutionality of a law because the police must usually assume the legislature will only pass laws that are constitutional. See Michigan v. DeFillippo, 443 U.S. 31, 38, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979) (“The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality — with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws.”). Police officers have a duty “to enforce laws until and unless they are declared unconstitutional.” Id. “If the statute is subsequently declared unconstitutional, excluding evidence obtained pursuant to it prior to such a judicial declaration will not deter future Fourth Amendment violations by an officer who has simply fulfilled his responsibility to enforce the statute as written.” *1244 Illinois v. Krull, 480 U.S. 340, 350, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987). Indeed, “[sjociety would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement.” DeFillippo, 443 U.S. at 38, 99 S.Ct. 2627. The same reliance argument does not apply to mistakes about substantive law.
Additionally, we permit reasonable mistakes of fact because “sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment....” Hill v. California, 401 U.S. 797, 804, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971). But the Supreme Court has also specifically noted that this reasonableness analysis applies to “factual judgments that law enforcement officials are expected to make.” Illinois v. Rodriguez, 497 U.S. 177, 184, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) (emphasis added). A totality of the circumstances approach makes sense in this factfinding role, because officers can exercise their judgment based on their experience and common sense. United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981) (“[T]he evidence ... must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.”). “Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part.” Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). Officers with reasonable suspicion often have no way to confirm a violation has been committed without further investigation. Cf. United States v. Cashman, 216 F.3d 582, 587 (7th Cir.2000) (“A trooper in Spetz’s position, then, passing or approaching [defendantj’s vehicle on the roadway, could readily and reasonably think that the crack [in the windshield] met the administrative criteria for excessive cracking ... [even though] careful measurement after the fact might reveal that the crack stopped just shy of the threshold for ‘excessive’ cracking or damage[.]”). But this need to make probabilistic judgments about the relevance of facts does not transfer to the interpretations of laws, of which officers can learn a definitive meaning before acting.
Finally, reformulating the legal question at issue in this case will likely clear up many of the dissent’s remaining uncertainties. The term “mistake of law” is somewhat misleading, as it is ultimately irrelevant what law the officer thought the defendant was violating. See Devenpeck v. Alford, 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004) (“Our cases make clear that an arresting officer’s state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause.”). The relevant question, in a case such as this one, is: Against what interpretation of the law should we assess the facts when deciding whether there was reasonable suspicion or probable cause to make a traffic stop? Like most of our sister circuits, we judge the facts against the correct interpretation of the law, as opposed to any other interpretation, even if arguably a reasonable one.[8]
This reformulation likely clarifies the result in many of the borderline cases cited by the dissent.[9] In the case of a local *1245 ordinance that conflicted with state law, an officer would likely be reasonably justified in relying on the local ordinance based on the reliance principles set forth in the Supreme Court’s cases analyzing mistakes regarding the constitutionality of the law. And some mistakes of law — say as to legal ownership — might nonetheless be excused as being closer to a mistake of fact, as they are not the substantive law upon which the officer is basing his reasonable suspicion or probable cause determination. Finally, we reiterate that we will uphold traffic stops as long as the law enforcement officer cites particularized facts that show he could have had a reasonable suspicion that any law was being violated.
Ill
The government argues that we should nonetheless affirm the district court because either (a) another legal basis existed for Officer Baker stopping or citing Nicholson, or (b) the good faith exception first recognized in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), should be applied in this case. The litigation history of this case, however, precludes us from doing so.
In its written response to Nicholson’s motion to suppress, the government argued that “Officer Baker had reasonable suspicion to conduct a traffic stop,” ROA Yol. I at 15, because he “observed [Nicholson’s vehicle] fail to maintain the inside left lane as it was turning and cut in front of traffic,” id. at 12. No other violation was mentioned, and the good faith exception under Leon was not asserted in the alternative. At the subsequent hearing on Nicholson’s motion, Baker testified on direct examination, in consistent fashion with the government’s arguments in its written response, that he observed Nicholson’s vehicle “fail[ ] to maintain the inside left lane turning to the right-hand lane, cutting off traffic” in that lane. ROA Vol. Ill at 361. Later on in his direct examination, Baker testified that the basis for his stop of Nicholson, as well as the ensuing citation he issued to Nicholson, was “fail[ure] to maintain inside left lane while turning,” which Baker described as a violation of both “State [and] City ordinance[s].” Id. at 370. During defense counsel’s cross-examination of Baker, the district court asked Baker to clarify his previous testimony:
THE COURT: Let me clarify something: How many violations are there here on this page that you saw?
THE WITNESS: How many violations?
THE COURT: Yes. I mean, are there one or two or more or just none, whatever. You ticketed him for one violation?
THE WITNESS: Yes, sir.
THE COURT: Is that all the violations that you saw?
THE WITNESS: Yes, sir.
THE COURT: All right. Now, as I look at this picture [of the intersection], is the violation occurring on Main Street on the northbound lane? No. Main Street is going north right?
THE WITNESS: Yes, sir.
THE COURT: Is the violation occurring on Main Street when he doesn’t come behind the white car or is the violation occurring on 19th as he moves, perhaps, into the outside lane of 19th?
THE WITNESS: It’s where he fails to maintain the left lane.
*1246 THE COURT: Okay. So it’s not a matter of him bulging out into the right-hand lane as he was on 19th?
THE WITNESS: No, sir.
THE COURT: It’s a matter of him swinging out into the outside lane on Main Street as he goes north?
THE WITNESS: Yes, sir. It he would have came into the interseciton wide and still maintained the left-hand lane, he would have been fine. It’s the failing to maintain the left lane, crossing into the right lane, is the violation.
Id. at 379-80. And during recross-examination, Officer Baker quoted the provision of the ordinance he cited Nicholson with violating and then testified, “To me, that’s saying that you need — the left turn shall be made to the left of the intersection maintaining the left lane. He [Nicholson] failed to do that.” Id. at 390.
As discussed above, we will uphold a traffic stop as lawful on the basis of any traffic violation for which the facts known to the officer established reasonable suspicion, even when the officer did not cite that provision of the traffic code when making the traffic stop. But at no point during the hearing did the government argue the existence of any other traffic violation that would have supported Baker’s stop of Nicholson. And although the government now argues for the first time on appeal that Officer Baker could have cited Nicholson for careless driving, there is no factual basis in the record for such a determination, even if we were inclined to overlook the government’s failure to assert this argument below.
As for the good faith exception, the government made no mention of it during the district court proceedings and raises it for the first time in its appellate response brief. Typically, “[ijssues and arguments which are not raised below will not ordinarily be considered on appeal.” Mann v. United States, 204 F.3d 1012, 1017 (10th Cir.2000). To be sure, “[w]e are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court.” United States v. Sandoval, 29 F.3d 537, 542 n. 6 (10th Cir.1994). But the government’s failure to raise this issue in district court means the parties developed no record evidence on this point. Therefore, even were we to reject Nicholson’s argument that the good faith exception does not apply as a matter of law, there is no support in the record for affirming the district court on the government’s theory. See Dissent Op. at 1256. (“Trying to administer the cost-benefit analysis [of the exclusionary rule] without the benefit of the district court’s factual findings on the relevant questions makes a tough task tougher still.”).
Nor is there, as the dissent urges, any basis for remanding the case for further factual findings on this issue. We have often instructed district courts to vacate convictions upon our reversing the denial of a motion to suppress. See, e.g., United States v. Neff, 681 F.3d 1134, 1143 (10th Cir.2012); United States v. Benard, 680 F.3d 1206, 1215 (10th Cir.2012); United States v. Trestyn, 646 F.3d 732, 744 (10th Cir.2011). We see no reason the government should receive the benefit of relit-igating this motion as a result of its own failure to raise an issue in district court.
IV
We REVERSE the district court’s denial of the motion to suppress and REMAND with directions to vacate Nicholson’s convictions.

. We note, however, that under N.M. Stat. Ann. § 66-7-105(C), any cars making a right turn on red needed to "yield the right-of-way to all pedestrians and vehicles lawfully or approaching the intersection.’1

. Although most states require a driver to turn left into the leftmost lane, others permit drivers to turn left into any lane. See, e.g., Cal. Veh.Code § 22100(b) ("After entering the intersection, the left turn shall be made so as to leave the intersection in a lane lawfully available to traffic moving in that direction upon the roadway being entered ....") (emphasis added); Fla. Stat. Ann. § 316.151(b); Tex. Transp. Code Ann. § 545.101(b)(2). But see, e.g., Colo.Rev.Stat. Ann. § 42-4-901(b) ("Whenever practicable, the left turn shall be made to the left of the center of the intersection so as to leave the intersection or other location in the extreme left-hand lane lawfully available to traffic moving in the same direction as such vehicle on the roadway being entered.”); Utah Code Ann. § 41-6a~ 801(2)(b) (“Left turns ... whenever practicable, shall be made by turning onto the roadway being entered in the extreme left-hand lane for traffic moving in the new direction. ...”); Wis. Stat. Ann. § 346.31(3)(c) ("A left turn shall be completed so as to enter the intersecting highway in the lane farthest to the left which is lawfully available to traffic moving the direction of the vehicle completing the left turn.”).

. The only differences between the Uniform Traffic Ordinance and the state statute (A)-(D) are that the Uniform Traffic Ordinance: 1) uses "street(s)” instead of "roadway(s)”; and 2) includes numerals next to numbers written as words.

. Although it never explicitly explained its reading of the ordinance in its brief, the government at oral argument suggested that the second sentence of § 12-6-5.1(B) prohibits turns like those made by Nicholson. But, by its text, this sentence only regulates the driver's position while within the intersection— presumably to avoid impeding oncoming traffic making left turns in the opposite direction — and does not address the proper positioning of the vehicle once the driver leaves the intersection. Again, we will not read into the ordinance words that could have been included. Statutes in other states with similar language regulating left turns specify which lane a driver must turn into. See, e.g., Colo.Rev.Stat. Ann. § 42-4-901(b) ("Whenever practicable, the left turn shall be made to the left of the center of the intersection so as to leave the intersection or other location in the extreme left-hand lane lawfully available to traffic moving in the same direction as such vehicle on the roadway being entered.”); Neb.Rev.Stat. Ann. § 60-6,159(2) ("[T]he left turn shall be made so as to leave the intersection, as nearly as practicable, in the extreme left-hand lane lawfully available to traffic moving in such direction upon the roadway being entered. Whenever practicable, the left turn shall be made in that portion of the intersection to the left of the center of the intersection.”); N.H.Rev.Stat. Ann. § 265:42(II)(a) ("Whenever practicable, a left turn shall be made to the left of the center of the intersection and so as to leave the intersection or other location in the extreme left *1241 hand lane lawfully available to traffic moving in the same direction as such vehicle on the roadway being entered.”).

. We acknowledge, however, that there is considerably more tension between state appellate courts as to whether police officer’s "reasonable” mistakes of law should be excused. Compare State v. Louwrens, 792 N.W.2d 649, 650 (Iowa 2010) (”[E]vidence derived from a stop based on a law enforcement officer’s mistake of law must be suppressed.”) and State v. Anderson, 683 N.W.2d 818, 823-24 (Minn.2004) with Moore v. State, 986 So.2d 928, 935 (Miss.2008) (en banc) ("Officer Moulds had sufficient probable cause to pull [defendant] over, although, as it turns out, Officer Moulds based his belief of a traffic violation on a mistake of law.”) and State v. Heien, 366 N.C. 271, 737 S.E.2d 351 (2012). See also Dissent Op. at 1254-55.

. Although we used the "plain and unambiguous” language in United States v. DeGasso, 369 F.3d 1139, 1144-45 (10th Cir.2004), there is no indication we actually intended to distinguish cases in which the officer makes a mistake about a "plain and unambiguous law” from cases involving more murky ones. Instead, we were merely describing what actually happened in that case: the officer stopped the defendant for driving with fog lamps on during the day when Oklahoma law clearly only prohibited the use of fog lamps as a substitute for headlamps at night. Id. at 1144.

. As the Fifth Circuit has pointed out, it is precisely because of the leeway we normally *1243 grant police officers that "the legal justification must be objectively grounded.” Miller, 146 F.3d at 279 (5th Cir. 1998).

. That is, jurisdictions that permit "reasonable” mistakes of substantive law require courts to assess whether there are also any incorrect (but reasonable) interpretations of our laws that might justify the government's assertion that an officer had observed sufficient facts to establish reasonable suspicion or probable cause.

. While the dissent characterizes these as "exceptions” to our rule, this again appears to be premised on the fact courts have misleadingly *1245 nded this as a rule about "mistakes of law.” All the prevailing rule purports to do is require courts make probable cause determina-dons by assessing the facts against the correct interpretation of the law.