FILED
United States Court of Appeals
Tenth Circuit

November 24, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

  Plaintiff - Appellee,

v.

WILLIAM MICHAEL CUNNINGHAM,

  Defendant - Appellant.

No. 15-1042
(D.C. No. 1: 14-CR-00134-CMA-1)
(D. Colo.)

### ORDER AND JUDGMENT[*]

Before **GORSUCH**, **O'BRIEN**, and **BACHARACH**, Circuit Judges.
_____

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. We are here concerned with a seizure in the form of a vehicle stop for a violation of one of myriad traffic offenses contained in the Colorado statutes. Since only

---

[*] The parties have waived oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). This case is submitted for decision on the briefs.
  This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1. It is appropriate as it relates to law of the case, issue preclusion and claim preclusion. Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished). *Id.*

unreasonable seizures are prohibited by the Constitution, "reasonableness" is ever the focal point. In this case, the reasonableness debate focuses on the meaning and applicability of statutes. The Supreme Court has long recognized that an officer's reasonable mistake of fact does not render a seizure, particularly a traffic stop, unconstitutional. Our cases do as well. But our cases have drawn the line at mistakes of fact; an officer's mistake of law cannot excuse an improper stop, even if reasonable. In that regard, our cases our wrong; an officer's reasonable mistake of law does not invalidate a traffic stop.

## I. Background

On March 21, 2014, William Cunningham was the front seat passenger of a vehicle being driven by Monique Ulloa. The car came to the attention of Denver police officers for a host of reasons not relevant to our decision.[1] Of significance is that Ulloa left the motel parking lot without signaling her intent to turn left onto a public road. The officers stopped her vehicle for violating Colo. Rev. Stat. § 42-4-903. It provides (in

---

[1] In the district court, the government argued, among other things, that the stop of Ulloa's vehicle was justified at its inception because the totality of the circumstances provided the officers with the necessary reasonable suspicion: (1) the stop occurred in a high-crime area, (2) upon seeing the officers' vehicle in the motel parking lot, Ulloa immediately turned around and exited the lot, (3) the stop occurred late at night, (4) Cunningham's seat was significantly reclined in the vehicle indicating an intent to conceal his presence, and (5) the officers' training and experience gave them the ability to distinguish between innocent and suspicious actions. The judge did not address this argument because she concluded the stop was justified based on Ulloa's failure to signal. We need not address it either. Indeed, the government has abandoned the argument by not raising it as an alternative means to uphold the judge's denial of the suppression motion. *See United States v. Esquivel-Rios*, 786 F.3d 1299, 1305 (10th Cir. 2015).

relevant part):

> (1) No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in section 42-4-901, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety and then only after giving an appropriate signal in the manner provided in sections 42-4-608 and 42-4-609.

A subsequent search of the vehicle revealed a firearm, which Cunningham admitted was his.

Cunningham was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Alleging a Fourth Amendment violation, he filed a motion to suppress the firearm as well as the statements he made to the officers. He claimed the stop of Ulloa's vehicle was not justified at its inception because no traffic violation had occurred and the officers made an error of law in thinking otherwise. Cunningham offered detailed and not unreasonable arguments in support of his position.[2]

The district judge carefully listened to interesting, but arcane, arguments and ultimately denied the motion. After considering Colo. Rev. Stat. § 42-4-903(1) and other provisions of the Colorado traffic code (accompanied by much linguistic slicing and dicing), she concluded the statute required Ulloa to signal her intention to turn onto a public street and her failure to do so was a traffic violation justifying the stop.[3]

---

[2] Because the parties are well aware of the arguments presented in this case, we will not repeat them in detail. As we explain, they are largely irrelevant to our disposition of this appeal.

[3] At the suppression hearing Ulloa testified to having used her turn signal. But the judge found her testimony unreliable and instead credited the testimony of one of the

(Continued . . .)

- 3 -

Cunningham entered a conditional guilty plea, reserving his right to appeal from the denial of his motion to suppress. He was sentenced to 37 months imprisonment.

## II. Discussion

In considering the denial of a motion to suppress evidence, we review the trial judge's factual findings for clear error but the ultimate issue—the reasonableness of the seizure—is subject to de novo review. *United States v. McHugh*, 639 F.3d 1250, 1255 (10th Cir. 2011).

The touchstone of Fourth Amendment analysis is always reasonableness. *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006). "A routine traffic stop is considered a seizure within the meaning of the Fourth Amendment and is analyzed under the principles applicable to investigative detentions . . . ." *United States v. Moore*, 795 F.3d 1224, 1228 (10th Cir. 2015) (citation and quotations omitted). "A traffic stop is reasonable if it is (1) justified at its inception and (2) reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* (quotations omitted). We are here concerned only with part (1). A stop is justified at the inception if it is based on an observed traffic violation or the officer has a reasonable articulable suspicion that "this particular motorist violated any one of the multitude of applicable

---

stopping officers who said she did not signal. Cunningham does not challenge this finding on appeal and rightly so because it turns on a credibility finding—one to which we owe substantial deference and one which is adequately supported by the record. *See Nat'l Ref. Co. v. Wagner*, 169 F.2d 43, 45 (10th Cir. 1948) (stating the credibility of witnesses and the weight to be given their testimony are questions for the trial court; a trial judge observes the witnesses while testifying and is in a better position to judge their credibility than an appellant court). Instead, he claims a failure to signal under these circumstances is not a traffic violation.

traffic and equipment regulations of the jurisdiction." *United States v. Botero–Ospina,* 71 F.3d 783, 787 (10th Cir. 1995) (en banc) (quotations omitted), *cert. denied,* 518 U.S. 1007 (1996).

When this case was argued in the district court the law was clear. An officer's reasonable mistake of fact does not a constitutional violation make. "[W]hat is generally demanded of the many factual determinations that must regularly be made by agents of the government . . . is not that they always be correct, but that they always be reasonable." *Illinois v. Rodriguez,* 497 U.S. 177, 185 (1990). And, in this circuit at least, the law was also clear that an officer's mistake of law is inexcusable. *See United States v. Nicholson*, 721 F.3d 1236, 1238 (10th Cir. 2013) ("Although an officer's mistake of fact can still justify a probable cause or reasonable suspicion determination for a traffic stop, an officer's mistake of law cannot."); *United States v. Tibbetts*, 396 F.3d 1132, 1138 (10th Cir. 2005) ("We have consistently held that an officer's mistake of fact, as distinguished from a mistake of law, may support probable cause or reasonable suspicion necessary to justify a traffic stop. But we have also held that failure to understand the law by the very person charged with enforcing it is *not* objectively reasonable.") (citations omitted). Those cases now offer cold comfort to Cunningham.

After the district court's judgment was entered the Supreme Court decided *Heien v. North Carolina*, --- U.S. ---, 135 S. Ct. 530 (2014). It held a reasonable "mistake of law can . . . give rise to the reasonable suspicion necessary to uphold [a] seizure under the

Fourth Amendment."[4]  *Id.* at 534.  That makes our task considerably easier.  We need not resolve the ultimate debate – whether turning from a motel parking lot onto a public street – is a violation of Colorado law.  We need only decide whether the officers reasonably thought it was.

*Heien* provided ground rules.  An officer's subjective understanding of the law is irrelevant; the mistake of law must be <u>objectively</u> reasonable.  *Id.* at 539.  "And the inquiry is not as forgiving as the one employed in the distinct context of deciding whether an officer is entitled to qualified immunity for a constitutional or statutory violation.  Thus, an officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is duty-bound to enforce."  *Id.* at 539-40.  Moreover, an officer's mistake of law may be reasonable if the law is ambiguous (reasonable minds could differ on the interpretation) and it has never been previously construed by the relevant courts.  *Id.* at 540.

There are several reasons why the officers' interpretation of Colorado law to require the use of a turn signal in this case was objectively reasonable.

First, with the luxury of time, the assistance of thorough briefing and argument by

---

[4] In the district court, the government argued the evidence should not be suppressed because the officers made a reasonable mistake of law and otherwise acted in good faith.  But at the time of the district judge's decision, *Heien* had not been decided and our case law was to the contrary.  *See Nicholson*, 721 F.3d at 1238; *Tibbetts*, 396 F.3d at 1138.  Thus, the district judge did not rely on the government's argument or even address it.  But "[w]e are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court."  *United States v. Sandoval*, 29 F.3d 537, 542 n.6 (10th Cir. 1994) (quotations omitted).

counsel, and upon careful analysis, the district judge concluded the officers were correct, not merely reasonable, in their interpretation.[5] Even if the district judge (and derivatively, the officers) was wrong in her analysis it was, beyond debate, reasonable. "If the statute is genuinely ambiguous, such that overturning the officer's judgment requires hard interpretive work, then the officer has made a reasonable mistake." *Id.* at 541 (Kagan, J., concurring).

Second, the Colorado Supreme Court has not addressed the issue, but a case from the Colorado Court of Appeals has done so in a similar, but not identical, context. In *Sigrist v. Love*, the defendant was driving north and the plaintiff was driving south on a public street. 510 P.2d 456, 457 (Colo. App. 1973). Due to a construction barricade partially obstructing the northbound lane of the public street, both the north and southbound lanes were moved over to the point that the southbound lane extended into a

---

[5] When, as in this case, the highest court in a state has not interpreted the relevant statute, "federal courts must predict how [it would do so] in light of existing state court opinions, comparable statutes, and decisions from other jurisdictions." *United States v. Harmon*, 742 F.3d 451, 456 (10th Cir. 2014); *see also Ruiz*, 589 F.3d at 1313. "In doing so, a federal court must follow state rules of statutory construction." *Ruiz*, 589 F.3d at 1313. Colorado's rules of statutory construction are familiar:

> [The goal of statutory interpretation] is to effectuate the legislature's intent. If statutory language is clear, we apply its plain and ordinary meaning. If the statute is reasonably susceptible to multiple interpretations, it is ambiguous and we determine the proper construction by examining the legislative intent, the circumstances surrounding its adoption, and possible consequences of various constructions.

*Hunsaker v. People*, 351 P.3d 388, 391 (Colo. 2015) (citations and quotations omitted). The district judge applied these rules in reaching her decision. Cunningham quarrels with her interpretation, but he cannot, with a straight face, charge it to be unreasonable.

store parking lot. *Id.* at 456-57. When the defendant turned left into the store parking lot, he struck the plaintiff's motorcycle. *Id.* at 457. The point of collision occurred inside the store parking lot. *Id.* at 457. The plaintiff sued the defendant alleging negligence. *Id.* at 456. He sought an instruction informing the jury that (1) Colorado law requires drivers "intending to turn to the left within an intersection or into an alley, private road, or driveway" to "yield the right-of-way to any vehicle approaching from the opposite direction" and (2) violating that law constitutes negligence. *Id.* at 457. The trial judge refused the instruction because the collision occurred on private property and the state statute only applied to streets and highways. *Id.* The appellate court reversed:

> Although the point of impact was 20 feet inside the parking area on private property, the conduct of the parties which caused the collision occurred on the public street. The defendant was proceeding north on a public street and the plaintiff was approaching him from the opposite direction on the same street. The right-of-way statute applied to the operation of the vehicles of the parties even though the actual collision of the vehicles occurred on private property.

*Id.* The case is not on all fours with this one but it is roughly analogous. *Sigrist* involved a driver turning from a public road to a private lot; the inverse is true in this case. But what *Sigrist* tells us is that in determining whether Colorado's traffic laws apply, the pertinent determination is whether the parties' conduct occurred on a public street or highway. *See* Colo. Rev. Stat. § 42-4-103(2) ("[t]he provisions of this article relating to the operation of vehicles and the movement of pedestrians refer exclusively to the use of streets and highways" absent certain limited exceptions). In *Sigrist*, the failure to use the required turn signal occurred on public property. In this case, while Ulloa's vehicle started from a private parking lot, the actual turning of her vehicle occurred on the public

- 8 -

street as did her responsibility to signal her intentions.

Third, we look to what other Colorado courts have done. At the time of the stop in this case, the district judges of Colorado were divided on this issue. *Compare People v. Villers*, Case No. 05-CV-698 (Larimer Cnty., Sept. 15 , 2005) (turn signal was not required when turning from a private alley onto a public street), *and People v. Philp*, Case No. 01T12882 (Jefferson Cnty., Feb. 8, 2002) (no turn signal required when turning left from a private parking lot to a public street), *with People v. Garcia-Baeza*, Case No. 13CR108 (Denver Cnty., Oct. 2, 2013) (signal required when turning left from gas station parking lot to public road). Importantly, the judge from Denver County, where the stop of Ulloa's vehicle occurred, concluded a signal was required when exiting a private parking lot and turning left onto a public road. Sharply divided interpretations from trial courts, where the rubber meets the road, strongly suggest the officers' understanding of the law was reasonable.

Fourth is our own analysis. The statute, § 42-4-903(1), expressly requires a signal when entering a private road or driveway but does not expressly require one when exiting therefrom. However, it also contains a residual clause requiring a signal when "otherwise turn[ing] a vehicle from a direct course or mov[ing] left or right upon a roadway." The officers in this case could reasonably believe this language encompassed turns when exiting a private parking lot because such turns constitute "turn[ing] a vehicle from a direct course." And they could also reasonably believe that "turn[ing] a vehicle from a

direct course" need not occur "upon a roadway."[6]

But it really doesn't matter. Even assuming "upon a roadway" modified "turn[ing] a vehicle from a direct course," the officers could have reasonably believed Ulloa's failure to signal in this case occurred "upon a roadway"—her turn required her to cross the westbound parking and driving lanes of the public road and enter its eastbound driving lane. Similarly, while Colorado's traffic code does not apply to private roads and driveways, *see* Colo. Rev. Stat. § 42-4-103(2), the conduct in this case did not occur exclusively on a private road or driveway. The officers could reasonably conclude (as we do) that such conduct involved "the use of streets or highways" under § 42-4-103(2). We have found no authority from the Colorado Supreme Court or any Colorado Court of Appeals indicating otherwise.

---

[6] As the district judge indicated, the language "upon a roadway" is a prepositional phrase. A prepositional phrase consists of a preposition, e.g., "upon", and its object, e.g., "a roadway." Prepositional phrases can act as either an adjective or adverb. In this case, the phrase acts as an adverb. The question is whether it modifies both "turn" and "move" or merely "move." The general rule is that a modifier, like an adverb, is placed next to the word it modifies. Here, the phrase "upon a roadway" appears next to the verb "move" and therefore the most logical reading of the statutory language is that the prepositional phrase "upon a roadway" modifies only the verb "move" and not the verb "turn." This is made clear by the fact that the verb "turn" contains its own adverbial prepositional phrase "from a direct course." If the Colorado legislature had wanted to require "upon a roadway" to also modify "move a vehicle from a direct course," it could have easily said so: "otherwise turn a vehicle from a direct course upon a roadway or move left or right upon a roadway."

**AFFIRMED.**

Entered by the Court:

**Terrence L. O'Brien**
United States Circuit Judge