Certiorari Denied, May 20, 2011, No. 32,974

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-050**

**Filing Date: March 28, 2011**

**Docket No.  28,614**

**STATE OF NEW MEXICO,**

   **Plaintiff-Appellee,**

**v.**

**RAFAEL J. ALMEIDA, JR.,**

   **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean, District Judge**

Gary K. King, Attorney General
Farhan Khan, Assistant Attorney General
Santa Fe, NM

for Appellee

Chief Public Defender
Eleanor Brogan, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**BUSTAMANTE, Judge.**

**{1}**     Defendant Rafael Almeida was stopped for a traffic violation:  he made a left turn but failed to complete it in the leftmost lane of the roadway he turned onto.  The encounter expanded and resulted in Defendant being arrested and charged with a number of misdemeanors and felonies.  Defendant filed a motion to suppress all of the evidence gathered as a result of the stop, arguing, alternatively, that the initial stop was improper

because NMSA 1978, Section 66-7-322(B) (1978), does not restrict which lane of a multi-lane road a vehicle must turn into after making a left turn and that the officer impermissibly expanded the scope of his investigation without reasonable suspicion.

{2}     The district court denied the motion to suppress, though no written order memorializing its ruling was ever filed. Thereafter, Defendant entered into a plea agreement, pleading guilty to being a felon in possession of a firearm and to one count of forgery. Defendant reserved the right to appeal the convictions resulting from the plea, and this appeal followed. Agreeing with Defendant that Section 66-7-322 does not require that left turning traffic turn into the leftmost lane available, we reverse.

**BACKGROUND**

{3}     Defendant had two encounters with law enforcement officers on January 24, 2007. In the afternoon just after 5:00 p.m., San Juan County sheriff's deputy Michael Farni stopped Defendant for failure to stop his truck at a stop sign. Defendant identified himself to the deputy as Elias Hernandez and received citations for failure to produce a driver's license and proof of insurance. The deputy saw Defendant sign the two citations. He retained the originals and gave Defendant copies.

{4}     Later that evening, Farmington police officer John Ahlm witnessed the same truck head south on Miller Street and turn left into the far right lane on Murray Street in Farmington, New Mexico. Because the truck turned into the far right lane and did not turn into the nearest available left lane, the officer believed this to be a traffic violation. The officer initiated a traffic stop on this basis.

{5}     During this second stop, Defendant again failed to produce a driver's license, registration, and proof of insurance. Officer Ahlm observed that Defendant "was very nervous or scared or something because his hands were trembling . . . very, very noticeable trembling." The officer looked inside the truck and saw a damaged steering column, with the ignition switch hanging down, which in his opinion, could indicate that "someone stole that vehicle potentially." Officer Ahlm asked Defendant why the steering column was damaged. Defendant replied that he had lost his keys. The officer grew more concerned as he observed Defendant's trembling and nervousness. Officer Ahlm testified that it

> appeared . . . that there was more going on than was immediately apparent, that . . . potentially [Defendant] had just committed a crime . . . [did not] have a driver's license and [did not] want to give me his information because his license was revoked or any number of things. Add that to the steering column being broken . . . my initial thought was maybe I just got a guy that just stole a vehicle.

{6}     After talking for a short time, Officer Ahlm asked Defendant to step out of the truck to continue the conversation. As Defendant exited the truck, Officer Ahlm observed a pistol lying next to the gas pedal. The officer reached around Defendant and pinned him against the bed of the pickup truck and requested back up by yelling to other officers present that

2

there was a weapon in the vehicle and that he needed assistance securing Defendant. Defendant was handcuffed and advised of his *Miranda* rights.

**{7}** After this encounter, Officer Ahlm realized that he recognized Defendant by sight, but he did not definitively remember his last name until it was "presented based on . . . a tattoo" found on Defendant. Officer Ahlm ran a background check that came back indicating there were outstanding warrants for Defendant's arrest. Defendant was subsequently transported to the Farmington jail. Dispatch requested Deputy Farni contact Officer Ahlm, who told him that he had transported Defendant to the Farmington jail. While at the jail, Deputy Farni recognized Defendant as the individual who had provided him with the false alias of "Elias Hernandez" earlier that day. Based on these events, Defendant was charged with two counts of forgery, felon in possession of a firearm, concealing identity, possession of drug paraphernalia, driving with a suspended/revoked license, and violation of a New Mexico Motor Vehicle Code.

## DISCUSSION

**{8}** Defendant contends Officer Ahlm had no reasonable suspicion to initiate a traffic stop because his belief that Defendant's failure to turn into the leftmost lane constituted a traffic violation was a mistake of law. *See State v. Ochoa*, 2009-NMCA-002, ¶¶ 36-37, 146 N.M. 32, 206 P.3d 143, *cert. quashed*, 2009-NMCERT-011, 147 N.M. 464, 225 P.3d 794 (traffic stops must be founded by a reasonable suspicion that the suspect has broken the law); *State v. Anaya*, 2008-NMCA-020, ¶ 7, 143 N.M. 431, 176 P.3d 1163 (holding that the officer's mistaken belief that a traffic offense had occurred did not create the necessary reasonable suspicion for a valid traffic stop).

**{9}** The New Mexico Motor Vehicle Code, Section 66-7-322(A), (B), and (D), "Required position and method of turning at intersections" provides:

> A. both the approach for a right turn and a right turn shall be made as close as practicable to the right-hand curb or edge of the roadway;

> B. at any intersection where traffic is permitted to move in both directions on each roadway entering the intersection, an approach for a left turn, except where left-turn provisions are made, shall be made in that portion of the right half of the roadway nearest the center line thereof and by passing to the right of such center line where it enters the intersection and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered. Whenever practicable the left turn shall be made in that portion of the intersection to the left of the center of the intersection;

> . . . .

> D. at any intersection where traffic is restricted to one direction on one or more of the roadways, the driver of a vehicle intending to turn left at any such intersection shall approach the intersection in the extreme left-

hand lane lawfully available to traffic moving in the direction of travel of such vehicle and after entering the intersection the left turn shall be made so as to leave the intersection, as nearly as practicable, in the left-hand lane lawfully available to traffic moving in such direction upon the roadway being entered[.]

**{10}** As recently noted by our Supreme Court in *State v. Hubble*, 2009-NMSC-014, ¶ 10, 146 N.M. 70, 206 P.3d 579:

> The primary goal in interpreting a statute is to give effect to the Legislature's intent; we first look at the words chosen by the Legislature and the plain meaning of those words. Under the plain meaning rule, when a statute's language is clear and unambiguous, we will give effect to the language and refrain from further statutory interpretation. We will not read into a statute language which is not there, especially when it makes sense as it is written.

(internal quotation marks and citations omitted).

**{11}** But, if a statute is vague or ambiguous and cannot be interpreted by a simple consideration of the statutory language, the court must look to other methods of statutory interpretation. *United Rentals Nw., Inc. v. Yearout Mech., Inc.*, 2010- NMSC-030, ¶ 16, 148 N.M. 426, 237 P.3d 728 ("We have long adhered to the notion that [t]he spirit, as well as the letter of the statute, must be respected; and where the whole context of a law demonstrates a particular intent in the [L]egislature to effect a certain object, some degree of implication may be called in to aid that intent." (first alteration in original) (internal quotation marks and citation omitted)).

**{12}** Enacted in 1953, as part of a comprehensive motor vehicle code, Section 66-7-322(B) has not been analyzed in any prior case. Our review is thus a matter of first impression. Parsing Section 66-7-322(B) reveals little about legislative intent with regard to the specific lane a left turn must end in. The section is clear that left turns must be made from the leftmost lane of the roadway from which the turn is being made. The section also indicates that drivers should enter the intersection in the same lane in which they approached and leave the intersection to the left of the center of the intersection "[w]henever practicable." *Id.* The section provides that a driver should "leave the intersection to the right of the center line of the roadway being entered." *Id.* The section simply does not specify a particular lane that the driver must end up in once the turn is completed.

**{13}** In contrast with Section 66-7-322(B)—which does not specifically address scenarios involving roadways with multiple lanes—Sections 66-7-322(A) and (D) do. Section 66-7-322(A) states: "both the approach for a right turn and a right turn shall be made as close as practicable to the right-hand curb or edge of the roadway[.]" Section 66-7-322(A) requires right-hand turns to be made into the rightmost lane of an intersection. In addition, Section 66-7-322(D) also requires vehicles turning left from roadways restricted to one direction of traffic to leave the intersection to do so in the leftmost lane "lawfully available to traffic."

4

**{14}** Statutes may be read in conjunction with surrounding provisions in order to deduce legislative intent. When doing so, it can be fairly inferred that silence in one particular instance is indicative of deliberate intent in another related provision. In the present case, both Sections 66-7-322(A) and (D) specify particularized lanes that must be the destination of a completed turn. Section 66-7-322(B), however, does not.

**{15}** When read in conjunction with Sections 66-7-322(A) and (D) a reasonable conclusion is that Section 66-7-322(B) permits the motorist discretion to choose a lane after completion of the turn, with illegality only coming into play if the turn is executed to the right "of the center of the intersection." We so hold.

**{16}** Because Officer Ahlm's belief that Defendant's failure to complete a left-hand turn into the leftmost lane of the approaching roadway was based on a mistake of law, the resulting traffic stop was without a reasonable basis in the law. The evidence obtained as a result of the stop was the fruit of the illegality and should have been suppressed. *State v. Ingram*, 1998-NMCA-177, ¶ 10, 126 N.M. 426, 970 P.2d 1151. The district court erred in denying Defendant's motion to suppress, and we reverse.

**{17}  IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**I CONCUR:**

_____
**LINDA M. VANZI, Judge**

**RODERICK T. KENNEDY, Judge (dissenting).**

**KENNEDY, Judge (dissenting)**.

**{18}** I read Sections 66-7-322(B) and (D) to require the left-turning driver to enter the road onto which he turns in the lane closest to the center line. Left lane to left lane. I therefore respectfully dissent.

_____
**RODERICK T. KENNEDY, Judge**

**Topic Index for *State v. Almeida*, Docket No 28,614**

| **AE** | **APPEAL AND ERROR** |
| AE-FE | Fundamental Error |

| **CT** | **CONSTITUTIONAL LAW** |
| CT-SU | Suppression of Evidence |

**CL**           **CRIMINAL LAW**
CL-MH            Motor Vehicle Violations

**CA**           **CRIMINAL PROCEDURE**
CA-MR            Motion to Suppress
CA-RS            Reasonable Suspicion

**ST**           **STATUTES**
ST-IP            Interpretation