GORSUCH, Circuit Judge,
dissenting.
What should the court do when an officer detains an individual based on what later turns out to be a mistaken — but rea *1247 sonable — belief that the law’s been broken? My colleagues suggest that an investigative detention resting on an officer’s mistake of law always violates the Fourth Amendment — even when the law at issue is deeply ambiguous and the officer’s interpretation entirely reasonable. Having found a Fourth Amendment violation, they proceed to order the suppression of all evidence found during the detention and direct the dismissal of all charges. Respectfully, I have my doubts.
Jesse Nicholson was in a hurry. Instead of finishing his left turn onto Main Street in the inside lane near the median, Mr. Nicholson steered into the outside lane near the curb. Aiming to do a little shopping on that side of the street, Mr. Nicholson no doubt sought to save himself the trouble of a lane change and make his way to the store the faster for it.
Spotting Mr. Nicholson’s maneuver, Officer Doyle Baker was none too pleased. He thought it violated the traffic code. As he understood the law, New Mexico drivers have to complete left turns in the inside lane of any road they enter that happens to bear multiple lanes. Mr. Nicholson didn’t do that, and what’s worse, by entering the outside lane instead he may have “cut off’ another car trying to turn right. Here’s how Officer Baker later depicted the scene:
[[Image here]]
After stopping Mr. Nicholson’s car and while approaching the driver’s window to issue a ticket, Officer Baker encountered a waft of burning marijuana spilling from the vehicle. A warrant application soon followed and then a search of Mr. Nicholson’s car, a search that yielded not just marijuana but methamphetamine, an unlawful handgun, various pills — and now this litigation.
Before the district court, Mr. Nicholson’s motion to suppress got him nowhere. He argued that evidence about the drugs *1248 and gun in his car should be excluded from any criminal proceedings against him because his traffic stop was unlawful. The government replied that the state traffic code required him to enter the inside lane after finishing his left turn, just as Officer Baker thought. With this the district court agreed, holding that “Officer Baker properly interpreted the [traffic code].... [and] the stop was valid.”
Only then did this seemingly simple case take a more complicated turn. As Mr. Nicholson prepared to appeal the district court’s ruling, a divided panel of New Mexico’s intermediate appellate court ruled in a separate case that the traffic code doesn’t require left turners to enter the inside lane. See State v. Almeida, 149 N.M. 651, 253 P.3d 941, 944 (N.M.Ct.App.2011). Though we aren’t bound to accept that interpretation, though it came over a dissent, though the court today assumes New Mexico’s left turn law is ambiguous, see Maj. Op. at 1240-41, though many other states do have laws against the maneuver, see id. at 1240-41 n. 4, I agree with my colleagues that Almeida still has the better reading of the New Mexico traffic code, at least as it’s currently constructed. So with the benefit of more than a little hindsight, we all agree Officer Baker, like the very able district court, made a mistake in reading the traffic code.
The question we face is what to do about it.
II
A
Instead of setting forth exact limits of the government’s search and seizure powers in some numbingly detailed (and no doubt quickly antiquated) list of do’s and don’ts, the framers of the Fourth Amendment more simply and ingeniously forbade all “unreasonable searches and seizures.” U.S. Const, amend. IV. In asking what triggers this test, in asking whether the government has acted reasonably, we must usually examine with care “the totality of the circumstances” or “the whole picture” of the case before us. United States v. Sokolow, 490 U.S. 1, 8, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). Rarely do we expect the Fourth Amendment’s reasonableness standard to yield “readily, or even usefully, ... a neat set of legal rules,” Sokolow, 490 U.S. at 7, 109 S.Ct. 1581, or “bright-line tests [or] mechanistic inquiries,” Florida v. Harris, - U.S. -, 133 S.Ct. 1050, 1055, 185 L.Ed.2d 61 (2013). Instead, by the very way it is written the Fourth Amendment more often requires us to assess the government’s actions in each case as it comes to us against “commonsense, nontechnical conceptions that deal with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.” Ornelas v. United States, 517 U.S. 690, 695, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (internal quotation marks omitted). By its terms, the Fourth Amendment seems to favor a case-by-case approach, one sensitive to the totality of the circumstances found in the case at hand, one that takes a realistic view of human capacities and limitations. Illinois v. Rodriguez, 497 U.S. 177, 185, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990).
I don’t doubt that many searches and seizures initiated because of an officer’s mistake about the law — because of a mistaken belief that a law proscribes the defendant’s conduct when none does — should be held unreasonable and so unconstitutional. Especially when the circumstances tend to suggest that the law is unambiguous, the error plain, the officer’s actions inconsistent with his training or common sense. At the same time, it seems to me we just don’t know enough yet about the totality of the circumstances surrounding Officer Baker’s mistake in this case to assess its reasonableness (or lack of rea *1249 sonableness) with any degree of confidence. We don’t because the district court rested its decision on the (in hindsight, itself mistaken) view that Officer Baker read the traffic code correctly and thus simply had no reason to reach the question.
To be sure, we do know some important things about Officer Baker’s conduct. With the benefit of Almeida, we know Officer Baker erred in his reading of the traffic code. But we also know that Officer Baker acted before Almeida issued; that no New Mexico authority rejected his interpretation of the traffic code at the time of the stop; that many other states hold unlawful turns like Mr. Nicholson’s; and that the mistake the officer made about the meaning of New Mexico’s traffic code was one the very able district judge and a dissent in Almeida made as well. We know, as well, that we live in a world where some laws are ambiguous and don’t admit an easy or even a single right answer, where interpretations of legal texts can be reasonable even though they may not be the ones we would choose. We recognize this reality in a whole array of contexts. See, e.g., Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (qualified immunity); Williams v. Taylor, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (habeas); Chevron, U.S.A, Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 843 & n. 11, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (administrative law). And we know that the majority today proceeds on the assumption that the left turn law at issue before us is indeed an ambiguous one. Maj. Op. at 1241.
But beyond these few things, we know little. We don’t know, for example, whether law enforcement officers in New Mexico typically share Officer Baker’s understanding that left turns into right lanes are illegal, whether Officer Baker relied on police training in thinking as much, or even whether as a practical and commonsensical matter a good many New Mexicans share Officer Baker’s skepticism about the legality of left turns into outside lanes. And this isn’t to say additional fact-finding could only help the government’s case. We also know nothing about the quality of any training Officer Baker received or the reasonableness of any decision Officer Baker made to rely on it. Or whether, perhaps, he just assumed that Mr. Nicholson’s maneuver had to be illegal.
At this stage, then, it seems to me we can only guess about the totality of the circumstances, the “factual and practical considerations of everyday life,” relevant to this case; and only guess, too, about how those considerations might inform a decision on the dispositive question whether a “reasonable and prudent” officer would have acted as Officer Baker did in the circumstances he faced. Ornelas, 517 U.S. at 695, 116 S.Ct. 1657. Rather than guess, I would allow the district court, with its fact-finding powers, the chance to take up those questions in the first instance. In this appeal, I would simply correct the district court’s mistake about New Mexico’s traffic law and remand the case to the district court for its reconsideration in that new light. Any decision this court might eventually be called on to make after remand would in this way be better informed by the relevant facts the district court alone can develop — and it would in this way benefit, too, from the district court’s considered judgment based on a correct understanding of the traffic code.
B
Instead of resting at this modest destination, my colleagues press on to a more ambitious one. Rather than correct the *1250 district court’s legal error and remand for further investigation into the reasonableness or unreasonableness of Officer Baker’s mistake in that new light, they proceed to hold categorically that an officer mistake of substantive law always violates the Fourth Amendment. They say “reformulating the legal question at issue in this case will likely clear up” any confusion why this new rule of constitutional law is necessary. Maj. Op. at 1244. But their reformulation only makes plain their view that it’s “irrelevant” whether the officer’s interpretation of the law was or was not “arguably a ... reasonable one.” Id. at 1244 (emphasis added). In the court’s view, an officer’s stop or search resting on a mistaken interpretation of substantive law always violates the Fourth Amendment — even if the law is confoundingly opaque and the mistake one entirely reasonable people would make. Id. at 1241.
Not only do I find it unnecessary to go so far to resolve this appeal, I worry about the destination. The court today seems to take us to places the Supreme Court has warned us against and to drive us into the maw of a circuit split.
For starters, my colleagues’ new categorical rule is hard to reconcile with the Fourth Amendment’s language and the Supreme Court’s general approach to it. As we’ve seen, our constitutionally assigned task is to assess the reasonableness of governmental conduct. In performing that job, we are usually told to be sensitive to the totality of the circumstances, to view rigid rules with a degree of skepticism, to ask what reasonably prudent people do and think and not how legal technicians might. Yet a legal technician’s rigid rule seems exactly what the court adopts today. Under the court’s approach, it doesn’t matter that the law is ambiguous and it doesn’t matter whether the facts on remand might show that most people in New Mexico read the law as Officer Baker did, that officers were trained to read it that way, or even that many experts agreed with this reading. Under the court’s approach, it simply doesn’t matter how “arguably ... reasonable,” Maj. Op. at 1244, Officer Baker’s mistake turns out to be in light of the totality of the circumstances: the fact that we “legal technicians” later (much later) find his interpretation in error is enough to be sure he violated the Fourth Amendment.
My colleagues’ categorical approach is in tension, too, with the Supreme Court’s even more specific directions about how we should treat officer errors in Fourth Amendment cases. It is long settled, for example, that “[a] traffic stop based on an officer’s incorrect but reasonable assessment of the facts does not violate the Fourth Amendment.” United States v. Tibbetts, 396 F.3d 1132, 1138 (10th Cir.2005) (emphasis added);’ see also Hill v. California, 401 U.S. 797, 803-04, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971). Exactly the same holds true for officer mistakes in interpreting the Constitution’s commands: only unreasonable mistakes offend the Fourth Amendment; reasonable mistakes are routinely upheld. See Michigan v. DeFillippo, 443 U.S. 31, 37-38, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). Whether we are facing a mistake of fact or constitutional law, then, we’ve been told to employ the traditional totality of the circumstances approach. It is unclear to me how or why we might single out officer mistakes of substantive law and adopt for them alone a new categorical Fourth Amendment rule alien to the treatment of all other species of officer mistakes. Not to mention when the Supreme Court and we already recognize that mistakes of substantive law can be and are reasonable in so many other contexts (qualified immunity, collateral review, administrative law, to name just a few).
*1251 For its part, the court today doesn’t dispute that all other kinds of officer mistakes are addressed under a totality of the circumstances approach in the Fourth Amendment context. It doesn’t dispute the adequacy of that traditional approach to protect Fourth Amendment values when it comes to other kinds of officer mistakes. It doesn’t dispute that we have long recognized in other doctrinal areas that mistakes of substantive law sometimes may be reasonable. Instead, it seeks to single out mistakes of substantive law alone and devise a new categorical rule of Fourth Amendment law for them alone.
But what the court today doesn’t do is tell us why its course is necessary. To be sure, the court does tell us that mistakes of constitutional law are different from mistakes of substantive law. Different because officers may assume the legislature will pass only laws that are constitutional, while this same “reliance argument does not apply to mistakes about substantive law.” Maj. Op. at 1244. The difficulty is, the court never explains how this observation compels its new rule. We might all agree that officers are usually entitled to assume the constitutionality of the substantive laws they are hired to enforce, just as the court says. But it’s unclear why this observation necessitates a new categorical rule holding officer mistakes of substantive law always violate the Fourth Amendment — why the usual totality of the circumstances approach isn’t inappropriate in this single arena. The court just doesn’t say.
Perhaps the court’s unspoken premise is that constitutional law errors are categorically forgiven so an inverse categorical rule condemning substantive law errors is unremarkable. But if that’s the premise, it is a faulty one. The Supreme Court has never said we should categorically forgive officer errors of constitutional law. Surely, after all, some constitutional standards are so blindingly clear and some statutes so blindingly unconstitutional that an officer enforcing those statutes would be unreasonable because “any person of reasonable prudence would be bound to see [their] flaws.” DeFillippo, 443 U.S. at 38, 99 S.Ct. 2627. An officer’s general ability to rely on the constitutionality of a legislature’s enactments, then, is not exception-less but merely serves as one consideration or input in the usual totality of the circumstances inquiry.
Turning to officer mistakes of fact, my colleagues say the usual totality of the circumstances approach is appropriate there because officers sometimes must make “probabilistic judgments” about uncertain factual scenarios “based on their experience and common sense,” judgments that may well be reasonable even if they later turn out to be wrong. Maj. Op. at 1244. Meanwhile, my colleagues reason, “this need to make probabilistic judgments ... does not transfer to the interpretations of laws.” Id. at 1244.
Once again, however, my colleagues don’t explain what difference their distinction makes. Even assuming officers never need to make probabilistic judgments about substantive laws, the court does not tell us why this warrants its unusual new rule, why the usual totality of the circumstances approach can’t do the job equally well.
Neither, once again and in any event, is the court’s premise correct. Officers sometimes do have to make probabilistic judgments not just about facts but also about whether the conduct they witness while on patrol falls within the scope of an ambiguous legal code. Judgments that may not be vindicated as correct in retrospect but that may be reasonable at the time. In qualified immunity cases we have long recognized that officers sometimes must and do make probabilistic judgments *1252 about ambiguous laws and we hold them civilly liable only when their judgments are foreclosed by clearly established law. In habeas and administrative law, we recognize that state courts and administrative agencies must sometimes make probabilistic judgments about ambiguous laws, and we usually decline to reverse them so long as their judgments are at least reasonable. It is altogether unclear why we would in the Fourth Amendment context alone ignore the reality that probabilistic judgments are and must be made all the time about ambiguous substantive laws, adopting a rule that prohibits us from ever upholding an officer’s entirely reasonable probabilistic judgment about even a painfully opaque state statute.
C
While the court fails to offer a persuasive account of the need for its new rule, one might wonder whether some other, unarticulated reason exists sufficient to sustain its conclusion.
One might wonder, for example, whether adopting any more forgiving an approach toward mistakes of law would risk inviting the moral hazard of discouraging officers from familiarizing themselves with the laws they are expected to enforce. Or whether failing to follow my colleagues’ new rule might even have the unintended secondary effect of inviting state legislatures to make their legal codes even more voluminous, knowing that by complicating the law they help make exclusion less likely-
These concerns have certainly given me pause in considering this case and no doubt will give pause to anyone concerned with Fourth Amendment values. But the difficulty is we also have to worry about any legal regime that fails to encourage officers to investigate the facts thoroughly enough or attend to the Constitution’s commands carefully enough. And as we’ve seen, the Supreme Court has long told us that the traditional totality of the circumstances approach affords sufficient protection against the relevant moral hazards in these situations by permitting us to identify unreasonable officer mistakes of fact or constitutional law, hold them unlawful, and in this manner deter future similar improper conduct. Before abandoning that approach, we need some account why it is uniquely ill-suited to mistakes of substantive law, why the totality of the circumstances approach is insufficient to address the relevant moral hazards only when it comes to mistakes of substantive law. That is a burden, however, neither Mr. Nicholson nor the court has sought to carry.[1]
Some have observed that lay persons can’t use “ignorance of the law” as an excuse for their torts or crimes. Given this rule, they submit, law enforcement officers shouldn’t be allowed to invoke the excuse to defend their searches and seizures. Simple fairness, the argument goes, requires no less.
I am not immune to the tug of this idea either but unexposed difficulties lurk here *1253 too. Most significantly, the notion that “ignorance of the law is no excuse” for defendants accused of crime or sued in tort is “subject to numerous exceptions and qualifications.” Wayne R. LaFave, Substantive Criminal Law § 5.6(a) (2d ed.). Some commentators have gone so far as to suggest that “[n]o area of the substantive criminal law has traditionally been surrounded by more confusion than that of ignorance or mistake of fact or law.” Id. So, for example, a defendant’s mistake of law does form a valid excuse if and when it negates a mens rea element necessary to secure liability or a conviction: a man who walks off with another’s umbrella on a rainy day thinking theft is not a crime may have no defense at common law, but the man who takes another’s umbrella thinking (incorrectly) his right to it has vested very well may have a good defense because theft often requires proof of an intent to deprive the owner the possession of his property. Id. Nor is that the end to the confusion. Even the apparently simple task of distinguishing between mistakes of fact and law can often prove vexing, so much so that in past cases we’ve sometimes had to remand the task to the district court for help. See, e.g., Tibbetts, 396 F.3d at 1138-39.
As all this highlights, if we really wanted to take up the task of transmogrifying a mens rea defense from tort and crime into a new Fourth Amendment rule — never mind that the Fourth Amendment usually doesn’t care about an officer’s state of mind — it would prove a much more subtle and onerous task than adopting a simple rule against all officer mistakes of substantive law. In each case we would have to ask not only whether the officer’s error really qualifies as one of law rather than fact — a question that would itself often wind up occupying much time and effort— we would also have to ask whether the error bears a closer resemblance to the mistake of the man who thinks his right to an umbrella has vested rather than the mistake of the man who thinks theft isn’t a crime. At the end of the day, too, we would have to ask whether the game is worth the candle, whether the complex regime we’ve created is actually any fairer or more protective of Fourth Amendment values than the traditional totality of the circumstances test.
My colleagues hint at a future where these questions come very much alive. Anticipating what we might call the umbrella problem, they acknowledge that “some mistakes of law — say as to legal ownership — might nonetheless be excused as being closer to a mistake of fact” for Fourth Amendment purposes. Maj. Op. at 1245. My colleagues thus adorn their new rule with a notable exception from its birth. And in doing so they invite debate in future cases over which officer errors of law are and are not close enough to factual errors to be treated as mistakes of fact subject to a totality of the circumstances analysis rather than subject to their new (now semi-)categorical rule for mistakes of law. The court’s candor about all this is admirable but it also suggests a future in which our attention is deflected from the underlying Fourth Amendment reasonableness question to the collateral and formalistic task of trying to distinguish “pure” mistakes of law from mistakes of law that seem “closer to” mistakes of fact. A future in which our course will be a good deal more convoluted but fail to yield any greater protection for Fourth Amendment values.
Neither is this the only concern we should have about the future. To avoid violating the Fourth Amendment, my colleagues insist that officers have to avoid mistakes even very able judges make when interpreting highly reticulated and ambiguous statutes. But what about, say, ambiguous case law? Especially when (as *1254 happens from time to time despite everyone’s best intentions) the relevant case law is demonstrably inconsistent? What about obscure regulatory edicts that may bear on an officer’s work? What about an officer charged with local ordinance that turns out to offend state statutes and is therefore invalid? See, e.g., United States v. Alexander, No. 07-00256, 2008 WL 2714076, at *10-11 (M.D.Tenn. July 9, 2008); Combined Commc’ns Corp. v. City & Cnty. of Denver, 189 Colo. 462, 542 P.2d 79, 82-83 (1975). In an age where law is as plentiful as trees in a forest and as tangled as the undergrowth, is it really appropriate to assume — as the court does — that every mistake of law is a Fourth Amendment violation?
Perhaps to avoid these complications there will emerge some way to limit the court’s holding today to officer errors of statutory law. But doing so would itself only raise further questions about the value and appropriateness of the court’s new rule in the first place. Consider the court’s effort to distinguish the local ordinance problem I’ve identified. The court says an officer “likely” would be justified in relying on and enforcing the ordinance “based on the reliance principles set forth in the Supreme Court’s cases analyzing mistakes regarding the constitutionality of the law.” Maj. Op. at 1245. But any resolution of a conflict between a local ordinance and state law is itself a question purely of state law (if sometimes state constitutional law), and the Supreme Court’s existing cases excusing reasonable mistakes of constitutional law are restricted to mistakes of federal constitutional law. So it seems the court today is prepared to open a second exception to its new rule about officer mistakes of law, one for errors concerning conflicts between local and state law. These errors may be treated under the usual totality of the circumstances test while errors in questions of pure statutory interpretation must be held, categorically, to violate the Fourth Amendment. In suggesting as much, the court only speeds us further down the road toward a regime with a “rule” pocketed with exceptions, one that promises to be a good deal more complicated to administer and not obviously any more protective of Fourth Amendment values than simply following the usual totality of the circumstances approach in every case.[2]
D
Whatever else might be said about the merits of its (now twice excepted) rule, the court today says its course is compelled by circuit precedent. But as it happens, the court today goes much further than any of our precedents — and in doing so propels us into the middle of a circuit split.
The court says United States v. DeGasso, 369 F.3d 1139 (10th Cir.2004), obliges it to hold all officer mistakes of law offend the Fourth Amendment. But that case merely ruled that an officer’s “failure to understand the plain and unambiguous law he is charged with enforcing ... is not objectively reasonable.” Id. at 1144-45 (emphasis added). In that case, too, there was no other evidence bearing on the officer’s reasonableness or unreasonableness before the court. Absent any attenuating *1255 circumstances, I don’t doubt we’d all agree without a moment’s pause that an officer’s failure to follow “plain and unambiguous” laws is unreasonable. But whether that description fairly applies to our case no one can say at this point. The district court has yet to assess the circumstances surrounding Officer Baker’s stop. And the court itself today expressly assumes the statute before us is ambiguous and so, by definition, seemingly untouched by De-Gasso’s holding concerning officer mistakes about the meaning of “plain and ambiguous” statutes. Maj. Op. at 1241.
The court also points to a sentence in Tibbetts stating that the “failure to understand the law by the very person charged with enforcing it is not objectively reasonable.” 396 F.3d at 1138 (emphasis in original). This language, the court reasons, requires us to hold that even an officer’s mistake about the most perplexingly ambiguous law is never reasonable for Fourth Amendment purposes. The difficulty is, the Tibbetts court wasn’t even sure whether the mistake at issue before it was one of fact or law and remanded the case to the district court to make that call, a call that could have easily wound up with a determination the error wasn’t one of law in the first place. Id. at 1138-39. It isn’t clear, then, whether Tibbetts’s stray sentence about mistakes of law that my colleagues lean on so heavily was even necessary to the resolution of the case or just dicta. See NLRB v. Int’l Bhd. of Elec. Workers, Local 340, 481 U.S. 573, 591 n. 15, 107 S.Ct. 2002, 95 L.Ed.2d 557 (1987) (statements “unnecessary to the disposition” are “dict[aj”). The same sort of difficulty attends the court’s reliance on Sherouse v. Ratchner, 573 F.3d 1055 (10th Cir.2009), where the court held the mistake before it wasn’t one of law at all but one better characterized as one of fact. Id. at 1060.
Neither, for that matter, is there any evidence that the court and parties in Tib-betts or Sherouse grappled with the reasonableness or unreasonableness of officer mistakes about ambiguous laws. Certainly neither case mentions the issue or the competing arguments on both sides of that debate — let alone acknowledges the circuit split we shall witness in a moment. And it is well settled that “[questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.” See Cooper Indus., Inc. v. Aviall Servs., Inc., 543 U.S. 157, 170, 125 S.Ct. 577, 160 L.Ed.2d 548 (2004) (quoting Webster v. Fall, 266 U.S. 507, 511, 45 S.Ct. 148, 69 L.Ed. 411 (1925)).
While this circuit has never before ventured a holding so bold as my colleagues do today, I readily acknowledge some others have adopted the categorical, no-mistakes-of-substantive-law rule my colleagues now endorse. See, e.g., United States v. McDonald, 453 F.3d 958, 961 (7th Cir.2006); United States v. Chanthasouxat, 342 F.3d 1271, 1279 (11th Cir.2003); United States v. Lopez-Soto, 205 F.3d 1101, 1106 (9th Cir.2000); United States v. Miller, 146 F.3d 274, 279 (5th Cir.1998). But many of these decisions seem to rely on the problematic analogy to the common law’s dictum that ignorance-of-the-law-is-no-excuse. And many other courts besides have expressly rejected such a categorical approach, preferring instead the traditional totality of the circumstances test. See, e.g., United States v. Martin, 411 F.3d 998, 1001 (8th Cir.2005); Travis v. State, 331 Ark. 7, 959 S.W.2d 32, 34 (1998); Moore v. State, 986 So.2d 928, 935 (Miss.2008); State v. Heien, 366 N.C. 271, 737 S.E.2d 351, 356 (2012); City of Wilmington v. Conner, 144 Ohio App.3d 735, 761 N.E.2d 663, 667 (2001); State v. Wright, 791 N.W.2d 791, 799 (S.D.2010).
*1256 Given how divided courts are, perhaps neither my colleagues nor I can claim the trump card when it comes to citing precedent and the only thing we can know for certain is that the substantive Fourth Amendment question dividing us will remain unsettled until our superiors speak.
Ill
A
Even when a Fourth Amendment violation exists, exclusion of evidence does not automatically follow. Other remedies (from administrative to civil) exist to punish and deter officer misconduct. To be sure, exclusion is an especially potent remedy, but it is one courts may choose to apply or not apply as a “prudential” matter, not one individuals may insist on as a matter of “personal constitutional right.” Davis v. United States, — U.S.—, 131 S.Ct. 2419, 2426, 180 L.Ed.2d 285 (2011) (internal quotation marks omitted); see also Herring v. United States, 555 U.S. 135, 141, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009).
Whether suppression is the right remedy in any particular case requires, the Supreme Court has said, an assessment of the competing social costs and benefits associated with exclusion. See Davis, 131 S.Ct. at 2427 (“Real deterrent value is a necessary condition for exclusion, but it is not a sufficient one. The analysis must also account for the substantial social costs generated by” exclusion (citations and internal quotation marks omitted)); Herring, 555 U.S. at 141,129 S.Ct. 695.
Trying to administer this cost-benefit task is difficult under the best of circumstances. In deciding whether to impose exclusion, courts must “weigh” or “compare” incommensurate goods (the deterrence benefits associated with suppression) and costs (the losses to society as a result of allowing criminal conduct to go unpunished)' — a challenge akin to “comparing constitutional apples with constitutional oranges.” Orin S. Kerr, Good Faith, New Law, and the Scope of the Exclusionary Rule, 99 Geo. L.J. 1077, 1108 (2011); see also Joseph Raz, The Morality of Freedom ch.13 (1986). A challenge made all the more complex by the grand societal scale on which the measurement is supposed to take place.
Trying to administer the cost-benefit analysis without the benefit of the district court’s factual findings on the relevant questions makes a tough task tougher still. At this point, for example, we don’t have any factual findings about how deterrable Officer Baker’s mistake might have been— findings that might allow us to judge how beneficent exclusion might prove to be. We don’t know if the officer stopped Mr. Nicholson because he lazily assumed the law must preclude the maneuver, because he diligently studied what was (incorrectly) taught at the police academy, or because he took his own best shot at reading the left-turn statute. Because we don’t know the relevant facts, we can’t meaningfully assess the risk that failing to exclude here would encourage other officer mistakes of law- — the likelihood that failing to exclude, in other words, would invite moral hazard. Neither do we have a full picture of the social costs that might or might not be associated with exclusion in this case. As I have already explained, I would remand the substantive Fourth Amendment question. Given that, it seems to me there is no reason to try to tackle the remedial question and its attendant factual questions for the first time in an appellate vacuum. After considering on remand whether Officer Baker’s conduct was constitutionally unreasonable, I would simply ask the district court to proceed to the question whether, assuming a constitutional violation, exclusion is the appropriate remedy.
*1257 Appearing to recognize the challenges associated with its cost-benefit approach, the Supreme Court has recently offered an alternative and seemingly more tractable test. It has instructed that the “basic insight” guiding the remedial inquiry is that “the deterrence benefits of exclusion vary with the culpability of the law enforcement conduct at issue. When the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs.” Davis, 131 S.Ct. at 2427 (alteration omitted) (citations omitted) (internal quotation marks omitted). The deterrent benefits associated with exclusion outweigh the costs, too, when law enforcement exhibits “recurring or systemic negligence.” Id. at 2428. But when officers behave only non-negligently “or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force.” Id. at 2427-28 (citations omitted) (internal quotation marks omitted). In these cases, exclusion’s “costly toll upon truth-seeking and law enforcement objectives” prove insufficient to “pay its way.” Herring, 555 U.S. at 141,147-48,129 S.Ct. 695.
This new culpability framework sounds familiar, even comforting, to judicial ears: courts are often called on to assess questions of culpability and they arguably bear more comparative advantages for that task than for performing society-wide cost-benefit analyses. Even so, it still seems to me the best place to begin the work of applying this framework lies in the district court — not this one. So I would ask the district court on remand to consider not just cost-benefit questions but culpability questions too. At this stage, this court simply doesn’t have enough facts to venture a guess what answers the culpability test might yield in this particular case. Based on what we do know, it seems evident Officer Baker’s conduct didn’t evince any deliberate or reckless indifference to Mr. Nicholson’s rights. Less clear, though, is whether the officer’s conduct was grossly negligent, simply negligent, or not negligent at all. Evidence would help sort this out.
Now, I admit some unanswered legal questions also exist about the culpability framework and a district court trying to handle this case on remand would reasonably expect our guidance on them in advance. What, for example, does the Supreme Court have in mind when it speaks of “simple, isolated” negligence? The phrase might mean “simple” (or ordinary) negligence that doesn’t occur very often (and so in this sense is “isolated”). Alternatively, the phrase might mean ordinary negligence committed by a third party who is in that sense “isolated” from the arresting officer. It seems to me the first alternative is by far the more likely. The first interpretation comports with the use of the term “isolated” in Herring, where the Court separately used the term “attenuation” — not “isolated” — to refer to a third party actor who committed the error. See 555 U.S. at 150, 129 S.Ct. 695 (referring to “an isolated, negligent recordkeeping error attenuated from the arrest”). And the second alternative leaves us with an under-determinative scheme, one lacking any guidance on how to treat ordinary negligence by arresting officers — a most unlikely outcome.
The line between “simple” and “gross” raises questions too. When it comes to defining degrees of negligence, adjectival epithets like “gross,” “wanton,” and “wicked” have long proven frustratingly protean. See, e.g., Steamboat New World v. King, 57 U.S. 469, 474, 16 How. 469, 14 L.Ed. 1019 (1853); Daniels v. Williams, 474 U.S. 327, 334, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); Wilson v. Brett, (1843) 152 Eng. Rep. 737 (Exch. of Pleas) 739; 11 *1258 M. & W. 113, 115-16. Suggestively, though, Davis and Herring refer to recklessness and gross negligence as separate categories and presumably this much indicates the Court intends a difference. We know that recklessness usually requires proof of a conscious indifference to the consequences of one’s conduct. See Model Penal Code § 2.02; W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 34, at 211-12 (5th ed.1984). So it seems we could safely advise the district court that gross negligence in this context requires a degree of officer culpability more than standard unreasonable conduct (negligence) but less than a conscious indifference to the consequences of his conduct (recklessness).[3]
B
My colleagues bypass the hard remedial questions, factual and legal. After finding a Fourth Amendment violation, they proceed immediately to order exclusion of evidence and instruct the district court to vacate Mr. Nicholson’s drug and firearm convictions. They say we can and should disregard the various remedial inquiries the Supreme Court has dictated because the government didn’t argue the question of remedy in the district court and thus forfeited it on appeal. See Maj. Op. at 1245.
I do not believe this is a course open to us. It is long settled that an appellee is entitled to “defend the judgment [it] won below on any ground supported by the record.” Robinson v. Robinson (In re Robinson), 921 F.2d 252, 253 (10th Cir.1990); see also S. Utah Wilderness Alliance v. Bureau of Land Mgmt., 425 F.3d 735, 745 n. 2 (10th Cir.2005); Tinkler v. United States ex rel. FAA, 982 F.2d 1456, 1461 n. 4 (10th Cir.1992). It is settled, too, that “in reviewing the decision of a lower court, it must be affirmed if the result is correct although the lower court relied upon a wrong ground or gave a wrong reason.” S.E.C. v. Chenery Corp., 318 U.S. 80, 88, 63 S.Ct. 454, 87 L.Ed. 626 (1943) (quotation marks omitted); Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224 (1937) (collecting authority). While the government didn’t present a remedial argument in the district court, it prevailed on the substantive Fourth Amendment question and so had little need to proceed to the question of remedy. Now defending its victory on appeal, the government has expressly argued — as it is entitled to do — that the district court should be affirmed either because no substantive Fourth Amendment violation occurred as the district court reasoned or because, even if a violation did occur, suppression is an inappropriate remedy. Mr. Nicholson has responded to both lines of defense. The remedial issue is thus properly presented and developed as an alternative ground for affirmance. I do not see how we might simply ignore the argument.
To this, the court replies by offering a second, separate rationale for declining to consider the remedial question. It contends that even if we took up the question the record as currently constituted is in *1259 sufficient to permit us to affirm. Maj. Op. at 1245. This course at least has the’ virtue of confronting the appellee’s alternative argument for affirmance, as we are obliged to do. But if, as I have suggested, a remand is already required on the substantive Fourth Amendment question, it follows that we should also permit the district court to develop a record and assess the remedial question on remand as well. Especially when the Supreme Court has instructed us — repeatedly—that exclusion isn’t automatic but should be closer to a “last resort’ ” than a “first impulse.” Hudson, 547 U.S. at 591, 126 S.Ct. 2159; see also Davis, 131 S.Ct. at 2426; Herring, 555 U.S. at 141, 129 S.Ct. 695. In similar circumstances other circuits have routinely followed exactly the path I suggest. See, e.g., United States v. Fugate, 499 Fed.Appx. 514, 520 (6th Cir.2012) (unpublished); United States v. Wright, 493 Fed.Appx. 265, 273 (3d Cir.2012) (unpublished); United States v. Master, 614 F.3d 236, 243 (6th Cir.2010); United States v. Julius, 610 F.3d 60, 67-68 (2d Cir.2010).
With a healthy dose of hindsight we know Officer Baker, like the district court, made a mistake. In my view, it’s enough work for the day to correct the mistake and remand the case for a thorough reassessment in that new light. My colleagues prefer a more arduous journey — to a new categorical rule, then to exceptions to that categorical rule, and finally to a refusal to entertain the government’s remedial argument. I do not doubt their journey is grounded in a wish to give voice to the Fourth Amendment. But at the end of the day I am unable to join them because the trip seems to me both unnecessary to resolve this appeal, uncertain to yield any benefit for Fourth Amendment values, and destined to take us places inconsistent with the Supreme Court’s instructions and into circuit splits besides. I respectfully dissent.

. The court does say “fears that [its] rule is too restrictive'' are "overstated” because any section of the traffic code — not just the one an officer cites — can be used to uphold a traffic stop. Maj. Op. at 1242-43. But I am not concerned with whether the court’s rule is "too restrictive” as a matter of policy, only with whether that new rule can be justified in light of existing jurisprudence. Besides, the court's argument may prove too much. By parallel reasoning, shouldn’t we adopt a categorical rule holding unconstitutional stops resting on an officer’s reasonable mistake that facts existed to permit the seizure when, in fact, no such facts existed? Such a rule, one might argue, wouldn’t be "too restrictive” because we already allow the government to justify a stop by pointing to facts unknown to the arresting officer but known to other officers.

. The court suggests that, when in doubt about the meaning of a law, officers “can, in some circumstances, seek a warrant to confirm their belief about the interpretation of a statute.’’ Maj. Op. at 1243. But the warrant requirement doesn't apply to traffic stops like the one at issue here, United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), because officers aren’t reasonably expected to seek warrants from courts (let alone ones that amount to a declaratory judgment on the meaning of an ambiguous statute and may require a good deal of study to decide) while following a suspect’s car and contemplating a traffic stop.

. Determining what separates "isolated” from "recurring” negligence presents difficulties as well. Should we look at the particular police department, the county, the state, or entire country? And what should we do about mistakes that appear more reasonable the more they occur? See, e.g., Chanthasouxat, 342 F.3d at 1279 (officer mistake of law "reasonable” when officer had "history of having written more than 100 tickets” in similar circumstances). And might the possibility that a failure to exclude would invite recurring negligence — the moral hazard problem and a possibility in this case — suffice for a finding of recurring negligence? On all this, we have no guidance from the Supreme Court yet and I confess I am without any advice to offer the district court. Some questions, and these may be among them, just have to be sorted out in cases as they come.